<i>New trial not to be granted.</i>

---

CLARK <i>against</i> PENDLETON.

<span style="float:right">20  495<br>69  664<br>20  495<br>72  732</span>

The allegation of a promise to marry, generally, is supported, by proof of a promise to marry, on request, or in a reasonable time, but is not supported, by proof of a promise to marry, at a specified future time, or on the happening of a future event, as on a return from a certain voyage.

Where the plaintiff's testimony, in an action for the breach of a promise of marriage, shewed, that the defendant had paid his addresses to the plaintiff, in the ordinary manner; rode and walked out with her; seemed unhappy, unless he was in her society, and so expressed himself; had his *daguerreotype* taken, and exchanged it with her for hers; referring to a voyage in

*New-London,*
July, 1850.

Clark
*v.*
Pendleton.

prospect, he said, they had thought of being married before, but the owners wanted him to sail, and they had concluded to be married on his return ; on another occasion, he said, they had given up being married until he came back ; and that their courtship was all done ; it was held, that this evidence conduced to prove a general promise to marry, on the part of the defendant, independently of any particular time or future event.

Where the court charged the jury, in such action, that if they should find from the evidence, that there was a promise to marry, without any specification as to the time when it was to be performed, and it was afterwards arranged by the parties, that the ceremony of marriage should not take place until the defendant should return from his contemplated voyage ; such evidence would be applicable to a count alleging a general promise of marriage, and a verdict might be rendered thereon for the plaintiff ; it was held, that such charge was correct.

Such an arrangement merely, would not constitute a new contract between the parties, which would discharge the former one, but would recognize its continued existence.

A promise to marry, in consideration of a similar promise by the other party, is not within the statute of frauds.

Nor is a promise to marry, after the defendant's return from a contemplated voyage, on which it was expected he would be absent eighteen months or more, within that statute, as an " agreement not to be performed within one year from the making thereof."

Where there are several counts in the declaration, and a general verdict is given, the court will not set it aside, because evidence which would support one count, was received as applicable to another, to which it was inapplicable.

Where the jury, in action for a breach of promise to marry, gave to the plaintiff, 1,500 dollars, damages ; it was held, that although they were higher than the court would have awarded ; yet as they did not appear to be flagrantly excessive, or disproportioned to the injury received by the plaintiff, the court would not disturb the verdict, on that ground ; the assessment of damages, in such a case, being peculiarly within the province of the jury.

THIS was an action for a breach of promise to marry the plaintiff. The declaration contained four counts.

In the first, the plaintiff declared, that on the 1st day of *June,* 1846, in consideration that she, the plaintiff, being then sole and unmarried, had, at the request of the defendant, undertaken and to him faithfully promised to marry him, in a reasonable time thereafter, when she should be thereunto requested, he, the defendant, undertook and to her, the plaintiff, faithfully promised to marry her, when he should be thereunto requested. A breach of such promise, on his part, though she had remained single and unmarried and had been ready to perform on her part, and had requested him to perform on his part, was then alleged.

In the second count, the plaintiff, after stating mutual

*New-London,*
July, 1850.

Clark
*v.*
Pendleton.

promises to marry, alleged, that the defendant, being about to embark upon a whaling voyage, and to be absent from the *United States*, for about the term of eighteen months, as was then expected, in consideration that the plaintiff had, at his request, promised to marry him, when thereto requested, after his return from said voyage, he, on the 1st day of *June,* 1846, undertook and to her faithfully promised to marry her, when thereto requested, after his return from said voyage; that he returned from said voyage, on the 30th day of *March,* 1848; alleging a subsequent request by her, and a breach on his part, as in the first count.

The third count was like the second, except that the defendant's promise to marry the plaintiff was alleged to be " within a reasonable time after his said return, when thereto requested."

The fourth count was like the first, except that the clause " in a reasonable time thereafter," next after the defendant's promise to marry, was omitted.

The defendant pleaded the general issue; on which the cause was tried, at *New-London, September* term, 1849.

On the trial, the following testimony was introduced, on the part of the plaintiff.

*Maria B. Langworthy,* sister of the plaintiff, testified as to the visits made to the plaintiff, by the defendant, at the house of her husband, *Henry B. Langworthy,* in the spring of 1846. He, the defendant, paid his addresses to the plaintiff, in the ordinary manner; rode and walked out with her; seemed unhappy, unless he was in her society, and so expressed himself. He often spoke of his happiness; and said, life had been more valuable to him, for a few weeks past, than all his life before. The defendant was going a voyage to sea, on a whaling voyage; and about a fortnight before he sailed, being at the house of Mr. *Langworthy,* he spoke of having their *daguerreotypes* taken; and asked my husband, whether they had better go to *Norwich* or *New-London,* for the purpose of having them taken. My husband thought it best to go to *New-York.* My husband asked him, if it was not a new idea? He said, Yes, they had thought of being married before; but the owners wanted him to sail; and they had concluded to be married *on his return:* that he wished her [the plaintiff] to be all ready, when he

*New-London,*
*July, 1850.*

Clark
*v.*
Pendleton.

should return ; that their courting was all done ; and that he should have nothing to do, but get a suit of clothes made, and they could be married in one or two weeks. It was expected, that he would be absent on his voyage, from months to two years. The *daguerreotypes* of the parties were taken in *New-York ;* and the defendant took that of the plaintiff, and gave her his.

The defendant went to sea, the 10th of *June,* 1846, and returned home, *March* 29th, 1848. He remained with the plaintiff until guns were fired from the ship, for him to come off to her, on the day she sailed from *Stonington :* he said, that when he returned, he should go and see his mother, and then should come and see her, and might come in his sailor's rig.

When he returned home, he did not come to see the plaintiff, on that day ; and the plaintiff requested Mr. *Langworthy* to call and see him, and ask why he did not call on her. The next day, he came, and had an interview with the plaintiff, in private ; and after the interview, they conversed in the hearing of the witness and her husband. The plaintiff seemed grieved, and said, he has broken my heart— he has broken my heart. The defendant said, he should not marry the plaintiff ; and asked her to release him from his engagement, which she declined to do. They conversed as to the causes which had induced him to break off the engagement ; and the causes spoken of by him were, that she had written some letters, which the defendant claimed were improper, and had spoken too freely of their engagement, &c. To this, she answered, that he was present when the letter was written ; which he did not deny. He also charged her with having written a letter to her aunt *Langworthy,* relative to charges made by Mrs. *Langworthy* against defendant's parents. The witness had heard defendant's mother request the plaintiff to write said letter to Mrs. *Langworthy.*

*Henry B. Langworthy,* husband of the first witness, had been long acquainted with the defendant. The defendant had been acquainted with the plaintiff, three or four years ; they had been in company together, previous to the defendant's last voyage. He testified substantially to the same facts, as to the acquaintance of the parties, in the spring of

New-London,
July, 1850.

Clark
v.
Pendleton.

1846, as had been stated by his wife.   In regard to the circumstances attending the taking of the *daguerreotypes*, he testified, that the defendant said, that he had made different arrangements as to the time of going to sea ; and that he expected to go the first of the next week ; that *Frances* and he had given up getting married, till he came back ; and that their courting was all done ; that he should have nothing to do, when he came back, before he got married, but get his clothes.   The *daguerreotypes* of the parties were taken in *New-York ;* the witness and his wife accompanying them there, for the purpose of having them taken.   Defendant taught my little son, aged about four, to call him uncle.   On the evening of the day that the defendant returned from sea, *March* 29th or 30th, 1848, the witness called on the defendant, at the request of the plaintiff, and asked him why he had not been to see her ; if he was not coming ?   The defendant replied, that he was sick, but should call, and would call on her, the next day.   The next day, he did call. The meeting between them seemed rather a cold one for lovers.   After they had had a private interview, the witness heard a conversation between them, in the presence of his wife.   [He here related it, substantially, as stated by his wife.]   The defendant said, at this time, he should not marry the plaintiff, as long as one of his family opposed it. After this interview, at the request of the plaintiff, the witness accompanied her to the house of Mrs. *Pendleton,* the mother of the defendant, with whom and a sister of the defendant, the defendant lived.   The plaintiff wished to know, what they had against her.   Mrs. *Pendleton* said, that if *Thos. Clark* was too good for her grand-daughter, *Frances T. Clark* was too good for her son ; and he should n't marry her.   Miss *Clark* then asked, is that all ? Mrs. *Pendleton* said, no ; she had written that vile, infernal letter.   The defendant said, Yes ; the vilest letter a female ever put pen to write.   Miss *Clark* said, you, addressing Mrs. *Pendleton,* requested me to write it.   No, no, my child, said Mrs. *Pendleton,* I never requested you to write it.   A few words more were said, and the parties separated. The defendant asked her for his letters to her, and her *daguerreotype* likeness ; but she did not give them up.   The witness said, that the health of the plaintiff, he thought, suf-

fered at first, from her disappointment; and that she was very much affected by it.

*James Lee* testified to receiving a letter from the plaintiff, delivered to him on the coast of *Chili*, in *November* or *December*, 1846, by the defendant; that he then had a conversation with the defendant, in which he spoke of being engaged to the plaintiff. He said, he had letters for me. He said, " You must allow me to read one of the letters, as I was seated by the lady when she wrote it." He told me of his engagement to the plaintiff; spoke of the frequency of his visits to her; showed me her *daguerreotype.*

*James H. Clark* testified, that in 1846, the defendant visited Mr. *Peleg Clark* Jr., and that *Frances* was there. They showed each other's miniatures. Defendant said, they were engaged; wanted her to be ready, as he should wish to be married as soon as he returned; not more than a week or so after that. Witness called at Mrs. *Pendleton's* with his sister, Mrs. *Langworthy.* The ladies asked Mr. *Langworthy* and myself to retire. After about half an hour, witness went in and enquired what was the privacy? Mrs. *Pendleton* said, only a letter *Frances* wrote, at her request. She said, it was very good for the occasion, only she wanted the law left out, and some sentences altered. Witness saw the letter in Mrs. *Pendleton's* hand.

*John E. Weeden,* a physician, deposed, that he had attend- the plaintiff, professionally; that the health of the plaintiff had been affected; that it was caused, in his opinion, by mental depression, arising from disappointment.

The defendant called *William Hyde,* who testified, that he had visited the plaintiff, as a physician, she having a nervous disease, arising from a punctured wound in the hand. He had also attended the plaintiff, at another time, when she was suffering from a spinal affection; and he noticed no evidence of mental depression. The injury was some years ago. Witness had not seen plaintiff since 1847.

*Betsey Pendleton,* mother of defendant, deposed to a conversation which she had with the plaintiff, as to some slanderous reports made by a Mrs. *Langworthy,* an aunt of the plaintiff; which reports were, that Mrs. *Pendleton* had had a foul disease, which was communicated to her, by her husband, since deceased. Also, that Miss *Clark* brought her a

New London,
July, 1850.

Clark
v.
Pendleton.

letter, addressed to Mrs. *Langworthy*, requiring her to contradict the slander, and asking the witness to sign it and send it, which she refused.  Witness stated, that she had never asked Miss *Clark* to write any such letter.

Mrs. *Denison Palmer*, sister of defendant, was present when *Frances* told Mrs. *P.* that her aunt *Langworthy* had said, that she hoped Capt. *P.* would not give her the bad disorder, as his father did to his mother.  That Mrs. *Pendleton* told *Frances*, she might tell her aunt, to go and see her physicians before she reported such a story.  After that, she brought a letter, and asked mother, if she would sign it; which she declined, and said she should consult her sons, before signing such a letter.  That she afterwards asked Mrs. *P.*, her mother, if her sons were going to have any thing to do with the story.  Mrs. *P.* said her sons would have nothing to do with it, with her consent; that Miss *Clark* said, that if Mrs. *Pendleton* and her sons at home refused to have this slander investigated, when the defendant came home, the story should be investigated, before she would marry the defendant; such a story should not be flung in her teeth after marriage.

Mrs. *Eliza Pollard*, a grand-daughter of Mrs. *Pendleton*, testified to the same facts substantially, as were sworn to by Mrs. *Palmer*.  She was present, when plaintiff told Mrs. *P.* of this report of Mrs. *L.*  She, Mrs. *Pendleton*, said to plaintiff, " I wish you would say to aunt *Lois Langworthy*, I wish she would consult my physicians."

The plaintiff also read in evidence a letter of the defendant to her, of which the following is a copy:

" *Western Islands, June* 29th, 1846.

*Dear Frances,*

A few lines in haste, which will inform you of my arrival here, after a passage of nineteen days, and am enjoying good health; hoping these will find you the same.  You are, dear *Frances*, constantly in my mind, when awake; and when asleep, I dream of thee.  A few days has rolled away since we parted; and perhaps months will revolve before we meet again, if permitted to meet again.  Lovely girl, think while I am tossed to and fro, on this wide ocean, I still love thee; although far out of sight, yet not out of mind.  Well do I recollect the happy hours we together have passed.  They were happy hours to me: but when the parting hand was ex-

tended, oh, what feelings then; tongue cannot express them; it was like taking my life, for you are as dear to me as my own life; and may we have the pleasure of meeting again this side of the grave; but if not permitted to meet on earth again, may we have the happiness of meeting in heaven above, where parting will be no more. I have been as firm in my mind respecting our engagement, while absent from you, as it was while in your presence; and trust I ever shall be, believing you will remain the same. I expect you are now enjoying yourself with your friends in *New-Port;* at least, I hope you are enjoying yourself, whether there or elsewhere; while I try to enjoy myself, as well as I can, on board of ship; for the pleasures and enjoyments at sea, are very different to what they are at home, especially when in your sweet presence; but still there are pleasant hours at sea, and many unpleasant ones; it is expected so to be. Oh that I could see your lovely face, if it were but a moment, and kiss those lips, which I have so often kissed.

Please excuse a few lines in haste; and think I remain your lover, and well wisher,

*Otis Pendleton.*

Give my love to your mother, and all of the family.

*Otis.*"

The defendant claimed, that there was no evidence to support the first and fourth counts, and prayed the court to instruct the jury, that if they should so find, and that the evidence supported the second and third counts only, the verdict must be for the defendant, because a promise not to be performed within one year, as stated in these counts, was void by the statute of frauds.

The court charged the jury, that if from the evidence it appeared, that a promise to marry generally had been made; and that afterwards, it was agreed, by the parties, that the ceremony should not be performed till the contemplated voyage had been made, and the defendant had returned, such testimony would be applicable to either the first or the fourth count, and a verdict might be rendered on those counts for the plaintiff. If there was no evidence but what applied either to the second or third count, the verdict must be for the defendant; and thereupon the court submitted to the jury, to find whether the evidence proved, that there were

mutual promises of marriage between the parties, without <span>New-London, July, 1850.</span>
any specification as to the time when the contract was to be
performed, which was afterwards postponed till the defend-<span>Clark v. Pendleton.</span>
ant had returned from his contemplated voyage.

The jury rendered a verdict for the plaintiff, for 1500 dollars damages.

The defendant thereupon moved for a new trial, for a misdirection ; because the verdict was palpably against the evidence in the cause, as applicable to the first and fourth counts ; and because the damages were unreasonable and excessive.

*Foster* (with whom was *Dixon*,) in support of the motion, contended, 1. that there was no evidence to support the first and fourth counts, on which alone, under the charge, the verdict could be, and was, rendered. The first count is on a promise to marry in a reasonable time thereafter, *i. e.* after the making of the promise, on the 1st day of *June* 1846, on request. The fourth count is on a promise to marry, generally. Now, there was not a particle of evidence to show, that the defendant made such a promise as is alleged in these counts. There were four witnesses, and four only, to prove a promise to marry. These were Mrs. *Langworthy*, Mr. *Langworthy*, *James Lee*, and *James H. Clark*. These all testify to a promise to be performed after *the happening of a future event*. [ Here the testimony referred to was minutely examined.]

2. That the instruction given to the jury, was erroneous. They were told, that if they should find from the evidence, that a promise to marry generally had been made, and that afterwards, it was agreed by the parties, that the ceremony should not be performed till the contemplated voyage had been made, and the defendant had returned, such testimony would be applicable to the first or fourth count ; and a verdict might, under such circumstances, be rendered for the plaintiff, on either of these counts. In the first place, there was a material and fatal variance between the *allegata* and the *probata*. The declaration, (*i. e.* the first and fourth counts, which, on this point, constitute the declaration,) in substance, is, on a promise to marry in a reasonable time, on request. The evidence to support the declaration, is a

*New-London,*
July, 1850.
———
Clark
*v.*
Pendleton.

promise to marry soon after the defendant's return from a voyage to sea, which would last from eighteen months to two years. That this variance is fatal, the authorities all show. The following will suffice. 1 *Greenl. Ev.* § 66. *Bristow* v. *Wright, Doug.* 665. S. C. 1 *Smith's Lea l. Ca.* 324. & n. 454, 5. 1 *Saund. Pl. & Ev.* 119. *Willoughby* v. *Raymond,* 4 *Conn. R.* 130. *Kellogg* v. *Denslow,* 14 *Conn. R.* 411. *Hall* v. *Campbell,* 6 *Greenl. R.* 109. *Bordenave* v. *Bartlett,* 5 *East,* 112. n. c. *Atchinson* v. *Baker, Peake's Add. Ca.* 103. Secondly, if there had been a promise to marry generally, and it was subsequently agreed to marry after the voyage was made, in eighteen months or two years, the latter promise and agreement discharged the former. 2 *Stark. Ev.* (3d. ed.) *Gilb. Ev.* 193. This was not a contract varied in the process of performance, but a *substituted* agreement.

3. That there was no evidence that the defendant broke off the engagement from any *improper motives.* He had, and manifested, the ardent feelings of a suitor, until he went to sea, and afterwards; but the plaintiff became involved, improperly, in a scandalous matter concerning the defendant's parents. She took a part in the slander; and he required her to put down the charge which she had been instrumental in propagating.

4. That the promise, not being to be performed within a year, and not being in writing, was within the statute of frauds, and of course, not binding upon the defendant. [This point was not much pressed.]

5. That the damages were unreasonable and excessive.

*Strong* and *Pomeroy,* contra, contended, 1. That this being a general verdict, if it can be sustained under either count of the declaration, it will not be set aside. *Wolcott* v. *Coleman,* 2 *Conn. R.* 324.

2. That the charge of the court to the jury was correct.

The defendant's letter shews that there had been a general engagement to marry, and that there was only a postponement of its consummation. This was not a rescinding of the engagement, but a recognition and confirmation of it.

3. That the promise alleged in the second and third counts, is not within the statute of frauds. This statute applies only

to contracts, which, by the *terms* of them, are not to be per- <span>*New-London*, July, 1850.</span> formed within the year. If it depends upon a contingency which may or may not happen within the year, the statute does not apply. The time for the execution of this contract was to depend upon the defendant's return from his contemplated voyage, which, though expected to continue eighteen months, was still altogether contingent. The termination of a whaling voyage depends upon its success, and various other causes, which may render a speedier return necessary. *Russell* v. *Slade*, 12 *Conn. R.* 455. *Fenton* v. *Emblers*, 3 *Burr.* 1278. *Anon.* 1 *Salk.* 280. *Smith* v. *Westall*, 1 *Ld. Raym.* 316. *Peter* v. *Compton. Skin.* 353. *Moore* v. *Fox*, 10 *Johns. R.* 244. *McLees* v. *Hall*, 10 *Wend. R.* 426. *Roberts* v. *Rockbottom Co.*, 7 *Metc.* 46. *Kent* v. *Kent*, 18 *Pick. R.* 569.

Clark<br>v.<br>Pendleton.

4. That there was no ground for a new trial, on account of the amount of damages. The question of damages, in an action of this sort, properly belongs to the jury. There was no evidence of passion, predjudice or partiality.

STORRS, J. The first and fourth counts of the declaration in this case, allege a promise, by the defendant, to marry the plaintiff, on request ; the second and third, to marry her, on request, after his return from a certain contemplated voyage. The defendant claims, that none of the evidence of the plaintiff supported the two former counts, on which alone, under the charge, a verdict for the plaintiff could be rendered.

The law construes a promise of marriage generally, that is, without specifying any particular time for its celebration, to be a promise to marry, on request. Proof of such a promise would, therefore, support the two former counts. But proof of a promise to marry at a specified future time, or on the happening of a future event, as, for instance, on a return from a certain voyage, would not support them. 1 *Greenl. Ev.* § 66. *Atchinson* v. *Baker, Peake's Add. Ca.* 103. *Cole* v. *Cottingham*, 8 *Car. & Pa.* 75. (34 *E. C. L.* 297.)

A majority of the court (*a*) are of opinion, that the evi-

(*a*) Allusion is here made to the opinion of the Chief Justice, who at first dissented, but, as the reporter understands, ultimately concurred, or at least acquiesced, in the decision.

dence of the plaintiff conduced to prove a general promise to marry, on the part of the defendant. The contract between the parties was not in writing, nor was there any direct evidence of an express promise by him; but the proof of that contract consisted of the conduct of the parties and the admissions of the defendant. Without adverting to the other evidence, we think that, by a fair construction of the testimony of the two first witnesses, the sister of the plaintiff and her husband, it tended to prove, that the contract of marriage between the parties, was a general engagement, without reference to any particular time or future event, when it was to be carried into effect, which would amount only to a promise to marry, on request; and that the arrangement between the parties respecting the celebration of it, after the defendant should return from his contemplated voyage, was subsequent to their entering into the contract, and only a decision by them as to the time when the performance of such contract should take place. The fair inference from the declarations of the defendant, as stated by these witnesses, is, that after their engagement, the time when the marriage should take place, became a subject of consultation between them, in which they came to a partial, though not definitive determination, that it should be celebrated before he should leave on his next voyage; but that, in consequence of his being required to sail sooner than he had expected, they concluded to postpone it until his return. The first of these witnesses testified, that the defendant, to a question whether the postponement of the marriage supposed to be indicated by an exchange of *Daguerreotypes*, was not a new idea, replied, " yes; we *thought* of being married *before*, but the owners want me to sail, and we have *concluded* to be married on my *return.*" The second witness testified, that, in regard to the circumstances attending the taking of the *Daguerreotypes*, the defendant said, " I have made *different arrangements* as to the time of *going to sea*, and I expect to go the first of next week; *Frances* (the plaintiff,) and I have *given up* getting married *till I come back.*" These expressions of the defendant are clearly not such as he would have used, if he had been speaking of a contract of marriage in which the particular time of its celebration was agreed on, when such contract was made, and of which, therefore, an

*New-London,*
*July,* 1850.

Clark
*v.*
Pendleton.

agreement as to such time formed a part. His language indicates, not that the original contract was given up, or to be departed from, but only that, as a matter of convenience, the time of its performance had been postponed, by a subsequent arrangement. See *Phillips* v. *Crutchly*, 3 *Car. & Pa.* 178. (14 *E. C. L.* 260.) *Potter* v. *Deboos*, 1 *Stark. Ca.* 82.

The next question respects the correctness of the charge, which was, that if there was a promise to marry, without any specification as to the time when it was to be performed, and it was afterwards arranged by the parties, that the ceremony of marriage should not take place until the defendant should return from his contemplated voyage, such evidence would be applicable to the first and fourth counts, and a verdict might be rendered on those counts, for the plaintiff. The defendant claims, that such a subsequent arrangement would constitute a new and different contract between the parties, which would discharge the former one. It would, undoubtedly, be competent for the parties, after the making of the first general contract, to make another one, by which they should agree to marry each other, on or after a particular future event, such as the return of the defendant from his expected voyage, in which case, the last agreement, being wholly different in its terms from, and indeed inconsistent with, the first, would supersede and annul it. The time for the performance of these agreements would, by their terms, be different; a performance of both must, from their nature, take place at different times; and the obligations of the parties under them might be contradictory.

But a mere arrangement by the parties fixing the time when an existing contract, to marry, on request, should be carried into effect, would not constitute the formation of a new contract, but would be entirely consistent with the subsisting agreement, have respect to and recognize its continued existence, and be a provision only as to its performance. A request or proposition, by the plaintiff, to the defendant, to celebrate the marriage, at a specified time, and an assent thereto, by the latter, would no more have the effect of destroying the original agreement, by the substitution of another, than, in the case of an agreement by one, to pay another a certain sum of money, or do any other act, on request, or in a reasonable time, a subsequent understanding between

them, that the act should be done at a particular time, would constitute an abandonment of the contract and the formation of another. The same principle applies to each of these cases. Such arrangement would be an act of the parties, which would furnish evidence of what would be a reasonable time for, and probably also of a request of, performance ; but to prove the making of a new contract, more explicit proof would be required, that such was the intention of the parties. On this point, therefore, the charge was correct.

But we think that part of it was erroneous, in which the jury were instructed, that the contract, as stated in the second and third counts, was within the statute of frauds ; and therefore, must be in writing. It is now well settled, that it was not an agreement made upon consideration of marriage within that statute. *Cocke* v. *Baker, Bul. N. P.* 280. *S. C.* 1 *Stra.* 34. Nor, in our opinion, is the agreement, as alleged in those counts, one which, by the true construction of that statute, was not to be performed within one year from the making thereof. It is not alleged, in any form, that it was made with reference to, or that its performance was to depend on the termination of a voyage which would necessarily occupy that time. It is only alleged, that it was expected by the parties, that the defendant would be absent for the period of eighteen months. But this expectation, which was only an opinion or belief of the parties, and the mental result of their private thoughts, constituted no part of the agreement itself ; nor was it connected with it, so as to explain or give a construction to it, although it naturally would, and probably did, form one of the motives which induced them to make the agreement. The thing thus anticipated did not enter into the contract, as one of its terms ; and according to it, as stated, the defendant, whenever he should have returned, after having embarked on the voyage, whether before or after the time during which it was thus expected to continue, would be under an obligation to perform his contract with the plaintiff. As it does not therefore appear, by its terms, as stated, that it was not to be performed within a year from the time when it was made, it is not within the statute. *Anon.* 1 *Salk.* 280. 1 *Ld. Raym.* 316. *Holt,* 326. *Peter* v. *Compton, Skin.* 353. *Fenton* v. *Emblers,* 3 *Burr.* 1278. *Moore* v. *Fox,* 10 *Johns. R.* 244. *Peters* v *West-*

*borough,* 19 *Pick.* 364. *Wells* v. *Horton,* 4 *Bing.* 40. (13
*E. C. L.* 332.) *Linscott* v. *McIntire,* 3 *Shep.* 201.

It is unnecessary for us to determine what would be the effect of proof that the event, upon which the performance of a verbal contract depended, could not by possibility take place within a year from the making thereof, when it did not appear from the contract itself that it was not to be performed within that time ; because there was no claim, in the present case, which raised that point.

If however the evidence of the plaintiff were not admissible, under the first and fourth counts, still, as it would, in that case, confessedly support the second and third ; and the verdict here is a general one for the plaintiff; justice would not require a new trial, and we should not set aside the verdict.

Respecting the damages given in this case, although they are higher than we should have awarded, they do not appear to us to be so flagrantly excessive or disproportioned to the injury received by the plaintiff, that we ought to disturb the verdict, on that ground. In such a case as this, the law furnishes no precise or definite rule of damages, and their assessment is peculiarly within the province of the jury ; and although it would be competent for us to grant a new trial, if the damages were palpably and grossly excessive, it is a power which has been very rarely exercised, and should be reserved for cases, where very clear, definite and satisfactory reasons can be given for such interference. This, in our opinion, is not such a case.

A new trial, therefore, is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.