No. 9528.

## WILSON v. ENSWORTH.

SEDUCTION.—*Promise.—Contract.—Consideration.*—A complaint by a woman for her own seduction, which shows by its averments that she was induced to yield her person to the defendant by the promise of a pecuniary consideration, which he has refused to perform, is bad on demurrer.

SAME.—*Public Policy.*—Such a contract, being immoral and vicious, is against public policy and void.

PRACTICE.—*Statute of Limitations.—Demurrer.*—The statute of limitations is not available on demurrer to a complaint unless it affirmatively appears that the case is not within any of the exceptions to the statute.

From the White Circuit Court.

*J. R. Coffroth, T. A. Stewart, A. W. Reynolds, E. B. Sellers* and *J. T. Sanderson,* for appellant.

*J. H. Ash* and *D. Turpie,* for appellee.

MORRIS, C.—The appellee sued the appellant in the Newton Circuit Court, for her own seduction. The suit was removed by change of venue to the Benton Circuit Court, and from the latter to the White Circuit Court. The complaint contains two paragraphs.

The first states that the appellee is over twenty-one years of age; and that she is, and has been for ten years, a resident of Goodland, Newton county, Indiana, and that until the committing of the wrongs by the appellant, hereinafter stated, she had been a person of good name and reputation, and deservedly enjoyed the esteem and good opinion of the community in which she lived, and was esteemed to be a person of good character for chastity; that the appellant, well knowing her good character and reputation, "wickedly, wrongfully, deceitfully, and purposely intending to injure the plaintiff, and to bring her into public scandal and disgrace, heretofore, to wit, on or about the 15th day of January, 1878, and within two years before the filing of her original complaint herein (she then being an unmarried woman), did wickedly, wrongfully, deceitfully, injuriously and purposely seduce, debauch, and carnally know the plaintiff, under the promise that he would pay off and fully discharge a certain mortgage indebtedness, and other legal liens, then existing against and upon certain real estate in said county of Newton, then belonging to and the property of said plaintiff, which were held by Josiah Stracon and James H. Taylor and others, and save her said property; that he would supply the plaintiff with money and means to carry on her trade and business as a milliner and dressmaker, in which business she was then engaged in said town of Goodland; and that he would also support the plaintiff with food, clothing, and the comforts and necessaries of life, if the plaintiff would submit her person to the lascivious and illicit desires of the defendant. She says these several promises and inducements were held out to the plaintiff by the defendant at divers times and on divers occasions, within two years immediately preceding the filing of her original complaint; but that the defendant did not furnish the money to pay off the aforesaid liens, nor did he perform either of his aforesaid promises, falsely made by him for the purpose and with the intent on his part of debauchery as aforesaid." It is averred, that, by means of the appellant's false

promises, which the appellee relied upon and believed, and by his falsehood, wiles, deceit, conniving and libertinism, the appellee has been seduced, debauched, and ruined, and reduced to penury and want, to her damage $10,000.

The second paragraph is like the first, except that it charges that the plaintiff was seduced on and at divers times after the 15th day of August, 1878 ; and that the promises of the appellant, which are the same as those alleged in the first paragraph, were made at the times she is alleged to have been seduced.

The appellant demurred separately to each paragraph of the complaint. The demurrer was overruled.

The appellant then answered the complaint in three paragraphs, the first being the general denial. Issue was taken on the second and third paragraphs of the answer by a general denial. The cause was tried by a jury, who returned a verdict for the appellee. The appellant moved for a new trial ; the motion was overruled ; he then moved in arrest of judgment ; this motion was also overruled.

The errors assigned question the rulings of the court upon the demurrer to the complaint, and on the motions for a new trial and in arrest of judgment.

The appellant insists that the demurrer to the first paragraph of the complaint should have been sustained, for the reason that it appears upon the face of it that the cause of action therein stated is barred by the statute of limitations. In this we think the appellant is mistaken. Unless it appears upon the face of the complaint, that neither party is within any exception contained in the statute, the question insisted upon can not be raised by demurrer. *Dunn* v. *Tousey*, 80 Ind. 288 ; *McCallam* v. *Pleasants*, 67 Ind. 542. There is nothing in either paragraph of the complaint to show that the appellant may not have been a non-resident of the State during a portion of the two years immediately preceding the commencement of this suit. Besides, it is averred in each paragraph of the complaint, that the seduction occurred

within two years before the filing of the original complaint. We think this objection not well taken.

It is also contended by the appellant that the alleged seduction was the result of a bargain, deliberately made between him and the appellee; that, in consideration that he would furnish her with pecuniary aid and support, she would consent to have criminal intercourse with him; that, such an arrangement being immoral and vicious and against public policy, the parties to it are, in the eye of the law, equally guilty, and neither can legally claim damages for its violation, or remuneration for consequences growing out of it.

On the other hand, the appellee insists that the real charge is. that the appellant, by falsehood, deceit, wiles, conniving and wrong, seduced the appellee; that the statements and averments in the complaint in relation to the appellant's promised aid and support may be regarded as surplusage, and that, if stricken out, as they should be, there will be enough left in the complaint to constitute a good cause of action. It may be true that, if the statements in relation to the pecuniary aid promised by the appellant were stricken out, the complaint would be good. *Rees* v. *Cupp*, 59 Ind. 566. But the question is, would the remaining words, upon the above supposition, have the same meaning when separated from the words stricken out that they would have if taken in connection with them. The substantial charge is that the appellant wickedly, deceitfully, wrongfully and purposely seduced the appellee. But this is expressly alleged to have been done *under*, that is, by means of, a promise on the part of the appellant to pay off liens on the appellee's property, furnish her money to carry on her business, and to keep and support her, in consideration that she would submit her person to his desires. It is alleged that she relied upon and believed these promises, and that he failed to fulfil them; that they were falsely made with a view to her seduction. It is also alleged, by way of conclusion, that by his promises, falsehood, wiles and. deceit, the appellant had ruined the appellee, etc.

It is impossible, we think, to resist the conclusion, from the facts as stated in the complaint, that the real grievance on the part of the appellee was the failure of the appellant to pay off the liens on her real estate, furnish her money to carry on her business and keep and support her, as he had promised to do. The words "wickedly, deceitfully, wrongfully and purposely," as used in the complaint, relate to the promised aid and support, and the failure of the appellant to fulfil his promises. Standing alone, they are without significance; but, taken in connection with the aid and assistance promised by the appellant, they have a clear and unmistakable meaning. They mean that the promises were made by the appellant without any honest purpose to perform them, and with a view to secure criminal relations with the appellee. However dishonorable and disreputable this may have been on the part of the appellant, the appellee is without remedy; she bargained for her virtue, and, if she failed to secure the price agreed upon, it is her own fault and folly, and she can not be heard to complain. Had the appellant paid off the liens upon the appellee's real estate, amounting to over $1,000, furnished her indefinite sums of money to carry on her business, and kept and supported her, as it is alleged he agreed to do, no one would think her entitled to additional compensation for the loss of her alleged chastity. She would have its agreed and accepted equivalent. If the appellee could not maintain this action had it been alleged in her complaint that, instead of failing, the appellant had performed all his promises, she can not maintain it upon the facts as stated. The contract is immoral and vicious, and against public policy.

As we construe the complaint, the appellee agreed to dispose of her virtue for a pecuniary consideration. Through this agreement, she lost that for which she now seeks compensation. The contract being immoral and illegal, the law will afford her no remedy for the consequences which may have grown out of and resulted from it. *Hogan* v. *Cregan*, 6 Robertson, 138; *Johnson* v. *Holliday*, 79 Ind. 151. It is possible

that a woman of mature age, who has once been married, and is a mother, may be seduced by the husband of another woman; but for such a woman to listen to the pecuniary persuasions of such a man would seem to involve mere mercenary considerations, and indicate an absence of chastity. The woman must have become debauched in feeling and sentiment, and unchaste, before she could entertain such a proposition. As said by the Supreme Court of Michigan, in the case of *People* v. *Clark*, 33 Mich. 112: " Illicit intercourse alone would not constitute the offence charged. In addition to this the complainant, relying upon some sufficient promise or inducement, and without which she would not have yielded, must have been drawn aside from the path of virtue she was honestly pursuing at the time." The averments in this case are, and such was the testimony of the appellee, that the illicit intercourse between the parties commenced early in January, 1878, more than two years before the commencement of this suit, and continued until August, 1879. It is true that their illicit relations ceased from some time in July, 1878, until the 15th of the following August. But there is no evidence that any genuine reformation on the part of the appellee produced this intermission of their criminal intercourse. MARSTON, J., in the case just referred to, says:

"Nor will illicit intercourse which takes place in consequence of, and in reliance upon a promise made, make the act seduction. If this were so, then the common prostitute, who is willing to sell her person to any man, might afterwards make the act seduction by proving that she yielded relying upon the promise of compensation made her by the man, and without which she would not have submitted to his embraces. Illicit intercourse, in reliance upon a promise made, is not sufficient, therefore, to make the act seduction. The nature of the promise, and the previous character of the woman as to chastity, must be considered."

It was as criminal on the part of the appellee to agree to part with her virtue for a pecuniary consideration as it was

on the part of the appellant to agree to pay it. Where the criminal intercourse results as much from the faults of the one as the other, there is no seduction. *Hill* v. *Wilson*, 8 Blackf. 123.

In this case the promise was pecuniary aid. Reliance upon such a promise did not make the act seduction. A promise to marry would be different, and constitute a sufficient inducement. The yielding of the woman to the solicitations of the man, under such a promise, would imply a promise on the part of the woman to marry the man. The contract would be legal, and for its breach the law would give the injured party a remedy. *Kenyon* v. *People*, 26 N. Y. 203; *Kurtz* v. *Frank*, 76 Ind. 594.

We think the judgment below should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellee.