Filed March 15, 1892.

No. 551.

## SAXON v. WOOD.

BREACH OF PROMISE.—*Immoral Consideration.*—*Insufficiency of Complaint.*— In an action for the breach of a contract of marriage the complaint failed to state a good cause of action which averred that the plaintiff, an unmarried woman, was solicited by the defendant to have sexual intercourse with him, which she refused to do; that thereafter defendant agreed with and promised her that if she would have sexual intercourse with him and become pregnant from such intercourse he would at once marry her; that in consideration of such promise and agreement so to marry in case of pregnancy, to which promise and agreement she assented, plaintiff yielded to defendant's solicitation and had sexual intercourse with him, from which pregnancy resulted and from which a child was born to the plaintiff; and that immediately upon the discovery of such pregnancy plaintiff, who was then willing to marry defendant, requested him to fulfil his said promise of marriage, which he refused to do, and still refuses to do, to her damage, etc. The contract pleaded was based upon an immoral consideration, and will not sustain an action for its breach. If there was an implied promise on the part of the plaintiff to marry it was so united with the immoral part of the consideration and so dependent upon the consequences of the immoral conduct proposed that it can not be separated and made to serve as a valid consideration. *Kurtz* v. *Frank*, 76 Ind. 594, and *Wilson* v. *Ensworth*, 85 Ind. 399, distinguished.

From the Fayette Circuit Court.

*J. I. Little* and *D. W. McKee*, for appellant.

*R. Conner* and *H. L. Frost*, for appellee.

BLACK, J.—The appellee, a minor, by her next friend, sued the appellant. Upon the appellant's motion the next

Saxon v. Wood.

friend was removed.   The appellee was permitted to prosecute her suit as a poor person. ' She recovered judgment for two hundred and fifty dollars.

A demurrer to the complaint for want of sufficient facts was overruled.   This ruling alone is assigned as error.

The complaint, filed in September, 1889, omitting the title of the cause, was as follows:

"Addie Wood, plaintiff, by Emma L. Disborough, her next friend, complains of Walter Saxon, defendant, and says that plaintiff was a minor of the age of twenty years on the — day of May, 1889; that for a period of one year prior to the time of the promise hereinafter alleged, the defendant kept company with, and paid his attentions to, plaintiff, as her suitor; that, on the — day of September, 1888, while so keeping company and paying his attentions, defendant solicited plaintiff to have sexual intercourse with him, which she refused to do ; that thereupon defendant agreed with and promised her that if she would have sexual intercourse with him, and she should become pregnant from such intercourse, he would at once marry her; that in consideration of such promise and agreement so to marry in case of pregnancy, to which promise and agreement she assented, plaintiff yielded to defendant's solicitations, and did, on four or five occasions, then and on days following, have sexual intercourse with defendant, from which pregnancy resulted, and from which a child was born to plaintiff; that plaintiff was, at the time of such promise and intercourse, and still is, unmarried ; that immediately upon the discovery of such pregnancy, plaintiff, who was then willing to marry defendant, requested defendant to fulfil his said promise of marriage, which defendant refused and still refuses to do, to plaintiff's damage in the sum of five thousand dollars.   Wherefore," etc.

In an action for a breach of a promise to marry a consideration for the promise must be shown.   There must have been mutual promises to marry.   Unless there has been a promise on the part of the plaintiff, the promise by the de-

fendant is void for want of consideration. *Adams* v. *Byerly*, 123 Ind. 368.

In the case before us the agreement of the parties did not consist merely of mutual promises to marry. The promise and agreement to which it was alleged the appellee assented was to marry in case of pregnancy resulting from her future intercourse with the appellant. It is alleged that he solicited her, not to marry him, but to have sexual intercourse with him, and offered marriage as a consideration for such intercourse and consequent pregnancy. Her acceptance of his offer implied her agreement to marry if their intercourse should result in her pregnancy.

The consideration of his promise to marry was alleged to be that she should have sexual intercourse with him, and should thereby become pregnant.

The marriage which they agreed about was not to take place until she should have so paid for it.

A woman can not maintain an action for her own seduction, where the yielding of her person has been induced by the promise of a pecuniary reward (*Wilson* v. *Ensworth*, 85 Ind. 399), but she may maintain such an action where she has been prevailed upon to surrender her chastity under the promise of the seducer to marry her. *Lee* v. *Hefley*, 21 Ind. 98; *Shewalter* v. *Bergman*, 123 Ind. 155, and cases cited.

Her action for seduction is an action of tort provided by statute, whereby she obtains damages for the defendant's wrong notwithstanding her consent to the act which injures her.

An action for a breach of promise to marry is a common law action founded upon a contract. An action will not lie for the breach of a contract based upon an illegal or immoral consideration. In 2 Kent Com. 466, it is said : " The consideration must not only be valuable, but it must be a lawful consideration and not repugnant to law, or sound policy, or good morals. *Ex turpi contractu actio non oritur ;* and no person, even so far back as the feudal ages, was permitted by

law to stipulate for iniquity. * * * If the contract grows immediately out of, or is connected with an illegal or immoral act, a court of justice will not enforce it." See, also, 2 Chitty Contr. (11 Am. ed.), 979; 1 Parson Contr. 456; Bishop Contr., section 494; 1 Wharton Contr., sections 370, 373.

The validity of a man's promise to marry a woman is dependent upon the consideration existing for such promise. *Felger* v. *Etzell*, 75 Ind. 417 (419).

In *Hanks* v. *Naglee*, 54 Cal. 51 (35 Am. R. 67), which was an action for a breach of promise to marry, the plaintiff testified in substance that the agreement between the parties was that the plaintiff should there presently surrender her person to the defendant, and that in consideration of such surrender the defendant would afterward marry her. It was held that, upon well settled principles, the plaintiff could not recover upon such a contract; that, being a contract for illicit cohabitation, it was tainted with immorality. See, also, *Boigneres* v. *Boulon*, 54 Cal. 146; *Baldy* v. *Stratton*, 11 Pa. St. 316; *Goodal* v. *Thurman*, 38 Tenn. (1 Head), 208; *Steinfeld* v. *Levy*, 16 Abb. Pr. (N. S.) 26.

If it be said that the complaint showed by implication a promise of the appellee to marry the appellant, yet she is not shown to have made any promise which could serve as a consideration for his promise. Her implied promise was so united with the immoral part of the consideration, and so dependent upon the consequences of the immoral conduct proposed, that it can not be separated and made to serve as a valid consideration. *Steinfeld* v. *Levy*, *supra*; *James* v. *Jellison*, 94 Ind. 292; *Elkhart County Lodge* v. *Crary*, 98 Ind. 238; *Rickets* v. *Harvey*, 106 Ind. 564.

The appellee relies in argument upon *Kurtz* v. *Frank*, 76 Ind. 594; *Wilson* v. *Ensworth*, 85 Ind. 399, and *Kenyon* v. *People*, 26 N. Y. 203.

*Kurtz* v. *Frank*, *supra*, was an action for breach of marriage contract. The questions presented on appeal arose

upon a, motion for a new trial. It is said in the opinion of the court: "The plaintiff testified that the defendant promised to marry her in September or October (1878); that he said he would marry her in the fall, if they could agree and get along, and be true to each other; but, if she became pregnant from their intercourse, he would marry her immediately. She did become pregnant about the middle of July, 1878, and informed the defendant of the fact as soon as aware of it. Upon this evidence, it is insisted that the agreement to marry immediately, in case of the plaintiff's pregnancy, is void because immoral, and that, aside from this part of the agreement, the defendant had until the first of December within which to fulfill his engagement; and, consequently, that the suit, begun as it was before that date, was prematurely brought. *It does not appear that the illicit intercourse entered into the consideration of the marriage contract,* but the appellant, having agreed to marry the appellee at a time then in the future, obtained the intercourse upon an assurance that, if pregnancy resulted, the contract *already made* should be performed at once. This did not supersede the original agreement, but fixed the time for its performance. *Clark* v. *Pendleton,* 20 Conn. 495. We are not prepared to lend judicial sanction and protection to the seducer by declaring that he may escape the obligation of his contract, *so made,* on the plea that it is immoral. But if this were otherwise, and if, by its terms, the contract was not to have been performed until at a time subsequent to the commencement of the suit, yet if, before the suit was brought, the appellant had renounced the contract, and declared his purpose not to keep it, that constituted a breach, for which the appellee had an immediate right of action."

The appellee relies upon the sentence, " We are not prepared," etc. This sentence and the portion of the opinion following it, as above quoted, had reference to the question whether the action was prematurely brought. The case lends no aid to the contention of the appellee. The court

in effect held that, if the time of performance fixed by the contract, into which no immorality entered, could not be changed and fixed by the assurance on the part of the defendant that if pregnancy should result the contract already made should be performed at once, then his renunciation of the contract to marry constituted a breach of that contract, and gave the plaintiff an immediate right of action on that contract, and, therefore, it was not necessary that the commencement of the action should have been delayed until the time fixed for the marriage in the original contract.

*Wilson* v. *Ensworth, supra,* was an action for the plaintiff's own seduction. It was said in the opinion of the court: " In this case the promise was pecuniary aid. Reliance upon such a promise did not make the act seduction. A promise to marry would be different, and constituted a sufficient inducement. The yielding of the woman to the solicitations of the man, under such a promise, would imply a promise on the part of the woman to marry the man. *The contract would be legal, and for its breach the law would give the injured party a remedy. Kenyon* v. *People,* 26 N. Y. 203 ; *Kurtz* v. *Frank,* 76 Ind. 594."

The injured party in such case might have a remedy by action for seduction, but illicit intercourse could not form a valid consideration for the contract to marry.

The statements that the contract would be legal, and that an action would lie for its breach, were not necessary to the decision of the case. *Kenyon* v. *People, supra,* was a criminal prosecution for seduction. The judge of the trial court charged the jury that if they were fully satisfied from the evidence that the defendant promised to marry the prosecutrix, if she would have carnal connection with him, and she, believing and confiding in such promise, and intending on her part to accept such offer of marriage, did have such carnal connection, it is a sufficient promise of marriage under the statute." The statute thus referred to was: "Any man who shall, under promise of marriage, seduce, and have illicit connec-

Saxon v. Wood.

tion with any unmarried female of previous chaste character, shall be guilty of misdemeanor," etc. In the opinion of WRIGHT, J., it was said of this instruction: "This seems to me unobjectionable. It is not necessary that the promise should be a valid and binding one between the parties. The offence consists in seducing and having illicit connection with an unmarried female under promise of marriage. It is enough that a promise is made which is a consideration for or inducement to the intercourse." Having thus given a sufficient reason for upholding the instruction, the judge proceeded: "But if the statute required the promise to be a valid one, the charge was correct. A mutual promise, on the part of the female seduced, is implied if she yields to the solicitations of the seducer, made under his promise to marry."

This suggestion that such implied promise, together with the seducer's express promise, made in consideration of or dependent upon solicited carnal intercourse, could constitute a valid contract to marry, is contrary to principle and authority. It appears from the report of the case that BALCOME, J., concurred with Judge WRIGHT in the conclusion that it was unnecessary for the district attorney to prove there was a valid contract of marriage between the prosecutrix and prisoner prior to the illicit connection, and said among other things, that before the statute could be construed as contended for by the prisoner's counsel, it should read that any man who shall, under contract of marriage, seduce, etc., and not any man who shall, under *promise* of marriage, seduce, etc., as it now is.

The judgment is reversed, and the cause is remanded, with instruction to sustain the demurrer to the complaint.

Filed March 16, 1892.