## Commonwealth v. Gartman.

*Criminal law—Fraudulent conversion—Unlawfulness of prosecutor's conduct—Act of May 18, 1917.*

1. On the trial of an indictment under the Act of May 18, 1917, P. L. 241, for the fraudulent conversion of money, the unlawfulness of the prosecutor's conduct is no defence to the crime charged. The only question is whether the evidence supports the verdict of guilty of fraudulent conversion by the defendant.

*Criminal law—Embezzlement by partners—Fraudulent conversion—Acts of June 3, 1885, and May 18, 1917.*

2. The Act of June 3, 1885, P. L. 60, providing for the punishment of embezzlement by partners, is still in force, and is the proper act under which an indictment must be framed when the facts disclose an embezzlement of partnership funds by a partner.

3. Under the Act of May 18, 1917, P. L. 241, defining and punishing fraudulent conversion, and providing that "it is the true intent and meaning of this act to define and punish a distinct and separate misdemeanor, and this act shall in no wise repeal or alter any statute relating to any felony or misdemeanor heretofore defined and punished by the laws of this Commonwealth," there can be no conviction if the testimony shows a case of embezzlement by a copartner.

*Partnership—Partnership to deal in liquor—Illegal contract.*

4. A partnership to carry on the business of buying and selling liquor contrary to law is based on an illegal contract, and is void.

Indictment for fraudulent conversion. Rule for new trial. Q. S. Berks Co., Dec. Sess., 1921, No. 184.

*Joseph R. Dickinson, William A. Witman, Jr.,* and *Todd Daniel,* for defendant and rule.

*Ellwood H. Deysher* and *H. Robert Mays,* District Attorney, contra.

SCHAEFFER, P. J., Orphans' Court, specially presiding, Oct. 21, 1922.—The defendant was indicted under the Act of May 18, 1917, P. L. 241, for the fraudulent conversion of the sum of $7200 belonging to one Moore. The indictment charged that on Dec. 10, 1921, the defendant, "having received and having in his possession a sum of money, lawful currency of the United States

of America, to wit, of the amount and value of seven thousand two hundred and twenty dollars ($7220), belonging to John A. Moore, did unlawfully and fraudulently convert and appropriate the same to and for his own use and benefit."

The case was tried and a verdict of guilty was returned by the jury on March 25, 1922.

The defendant filed seven reasons in support of the motion for a new trial. The reason urged most strongly at the argument was the fifth, which alleges that: "The evidence in the case is such as to support and show an offence, if any offence was shown, indictable under acts of assembly other than the Act of May 18, 1917, P. L. 241, under which the indictment was framed, and, therefore, there could be no conviction under the indictment upon which the defendant was tried."

Before discussing this reason, as well as the others, we will briefly state the basis of the prosecution and defence. It appeared that the defendant, Dr. Gartman, who is a dentist, with one Niemczyk, was engaged in the wholesale and retail drug business, trading as the South End Drug Company, located in the City of Reading. Gartman and Niemczyk possessed a basic permit to buy and sell liquor—the permit authorizing them to withdraw only 100 gallons of liquor every three months. Moore, the prosecutor, was informed by one Garrett that Gartman, the defendant, was in the drug business and had a permit to sell liquors, and thereupon, after some negotiations between the parties, Moore and one Hittner, who was a hotel-keeper, in June, 1921, advanced $7320 and $7000, respectively, to the defendant to be used by him to buy whiskey certificates, with which he could get the whiskey under this permit, sell it and divide the profits among the three of them. The Commonwealth contended that, instead of using the $7320 furnished by Moore for the purchase of certificates, he appropriated the same to his own use, absconded, and was finally arrested in California in the latter part of September, 1921. The defendant denied the fraudulent appropriation of this money, and maintained that when he left Reading on Sept. 14, 1921, and went to Hot Springs, Arkansas, Kentucky, and ultimately to Los Angeles, he had no intention of cheating and defrauding Moore, but that he left for the dual purpose of regaining and improving his health and of purchasing whiskey certificates and whiskey. The Commonwealth contended the defendant had absconded; the defendant denied it, but the jury found against him.

The reading of this record will disclose that all these parties were engaged in an undertaking that was not laudable. That their sole object was to frustrate the law by illegally selling liquor, and thus reap large profits, is very obvious upon examination of the evidence offered at the trial.

The defendant characterized the transaction as "a conspiracy against the United States Government to withdraw whiskey." And while it is true that Moore, whose money the Commonwealth alleged the defendant appropriated to his own use, does not appear in a very favorable light in this case and was undoubtedly a party to this unlawful transaction, yet the unlawfulness of his conduct has nothing to do with the case: Com. v. Robzin et al., 78 Pa. Superior Ct. 293; for the only question is, Does the evidence support the verdict of guilty of fraudulent conversion by the defendant?

Counsel for defendant say in support of the fifth reason—which alleges that the crime of fraudulent conversion under the Act of 1917 has not been proved—that the evidence of the Commonwealth shows that this was a partnership entered into by these parties, and that, consequently, Gartman could not be convicted on this indictment because embezzlement by a partner is

3 D. & C.

covered by the Act of June 3, 1885, § 1, P. L. 60, and is, therefore, not made indictable under the Act of 1917.

The Act of June 3, 1885, P. L. 60, providing for the punishment of embezzlement by partners, is still in force, and is the proper act under which an indictment must be framed when the facts disclose an embezzlement of partnership funds by a copartner. The Act of May 18, 1917, P. L. 241, provides that "it is the true intent and meaning of this act to define and punish a distinct and separate misdemeanor; and this act shall in no wise repeal or alter any statute relating to any felony or misdemeanor heretofore defined and punished by the laws of this Commonwealth."

The maximum punishment under the Act of 1885 is two years, or fine of $1000; under the Act of 1917, it is five years, or fine of $1000. From a practical standpoint, it is important to determine whether the testimony shows a case of embezzlement by a copartner. "If so, there can be no conviction under the Act of 1917. Its language is too plain for discussion:" Com. v. Dixon, 49 Pa. C. C. Reps. 527.

Moore, the prosecutor, testified concerning the arrangement he had with the defendant: "Q. And you expected him to use your money in buying certificates under that permit? A. Yes, sir. Q. Which was in his name? A. Yes, sir. Q. And not in your name? A. No. Q. Nor in the name of Mr. Hittner? A. No, sir. Q. And Mr. Gartman was to dispose of the whiskey that he would receive on the certificates? A. Yes, sir; he was to have charge of all that. Q. He would withdraw whiskey on the certificates that he would purchase? A. Yes, sir. Q. And he would sell the whiskey? A. Yes. Q. And you were to get a portion of the profits? A. So it was understood— yes; we were to be equal partners. Q. That is, Dr. Gartman, however, was to get the whiskey; he was to get it withdrawn on the permits for its withdrawal, bring it to Reading and sell it wherever he could? A. Yes. Q. You were to have nothing to do with the actual sale—the business of selling the whiskey? A. No, sir. Q. But, after deducting the actual cost of the whiskey that he would buy from the moneys that he would sell it for, that difference was to be divided into three parts? A. As well as the drug business—yes, sir. Q. The drug business was to deal in this alcohol, this whiskey? A. For the manufacturing of different drugs. . . . Q. You didn't intend to draw up any form of partnership agreement or anything of that kind? A. It was understood that we were to be partners—yes, equal partners."

The defendant gives a different version of the matter and states that Moore and Hittner did not pretend to be interested in the drug business, but became partners with him solely in the liquor business. The defendant had a basic permit to withdraw liquor, and it was agreed that he would buy certificates and arrange to get withdrawals, legally or illegally, and, upon getting the liquor, he would turn it over to the prosecutor, Moore, and Hittner at a price of $8.60 per gallon, and, upon their selling the same at a price in excess of this, the three of them would divide the profits. The defendant's testimony on this point is: "Mr. Moore and Mr. Hittner wanted me to give them the whiskey after it was withdrawn and they would do all the selling; the price to them would be $8.60 per gallon, and we would split the profit after they would sell it." The defendant also said, in response to questions as to the parties interested in this transaction: "They wanted whiskey; they didn't want no money; they wanted whiskey. It was a conspiracy against the United States Government to withdraw whiskey."

The argument is made that the testimony of Moore shows that there was a partnership to engage in the drug and liquor business. It does not necessarily

follow that because parties enter into an agreement, under which one advances money which the other is to use in the purchase of stocks or certificates, and it is agreed that the two shall divide the profits, that the contract is one of partnership: Rosenblatt v. Weinman, 225 Pa. 200. Nor does an agreement between two individuals to enter into a single transaction of purchase for the purpose of profit necessarily create a partnership: Galbreath v. Moore, 2 Watts, 86.

Moreover, when we come to determine whether a legal partnership existed, we must look at the whole of this undertaking and consider the purpose of it. The law regards substance, not shadows. Was this a partnership between these parties, such as the law recognizes? "A partnership is an association with certain incidents recognized by law for the convenient transaction of legitimate trade and business; it cannot, therefore, be formed for an illegal purpose or one contrary to public policy:" 1 Lindley on Partnerships, 91.

"A partnership cannot be formed for an illegal purpose or one contrary to public policy:" 20 Ruling Case Law, 818. If a partnership is formed for the prosecution of an illegal business, or for the conduct of a lawful business in an illegal manner, the courts will refuse to recognize its existence: 30 Cyc., 356. In McMullen v. Hoffman, 174 U. S. 639, 654 (1898), Mr. Justice Peckman said: "The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract."

A partnership to carry on the business of buying and selling liquor contrary to law is based on an illegal contract and is void. Public justice and public morals alike forbid the interposition of courts of justice to lend their aid to a purpose like this. That the parties in this case were engaged in an unlawful undertaking is demonstrated by the testimony of the prosecutor and the defendant. Moore said it was a partnership to buy and sell liquor under a permit held by Gartman, the defendant; a permit which the Government had issued to Gartman, and not to Moore, and under which Moore had no right to sell liquors. So, according to Moore's testimony, he was engaged in an enterprise that employed unlawful means in the conduct of it. But allowing that Moore's testimony shows a technical partnership, as alleged by the defendant in support of this motion for a new trial, what does his testimony disclose as to the true character of the relation of the parties? It shows that he was to get the whiskey, give it to Moore and Hittner at $8.60 per gallon, and they were to sell it and divide the profits. He also called this arrangement a "conspiracy against the Government to withdraw whiskey." The defendant cannot ask that his case be presented to a jury on a certain theory, when everything he has said and done makes against that theory. He admits the illegality of this agreement between him and Moore and Hittner in saying that he was to get the liquor and they were to sell it, which they had no right to do, and yet seeks to rely on a legal partnership, which he claims the evidence establishes for relief from this conviction.

If there was a variance between the proofs and the indictment, which should have been fatal when the Commonwealth rested its case, and even though the court refused to direct a verdict of not guilty, the defendant was not compelled to offer proof and go on with his defence; but having done so and having supplied proofs which the Commonwealth had failed or been unable to produce, it hardly lies in his mouth to say that his testimony must be eliminated and disregarded in determining the sufficiency of proof to establish the charge in the indictment.

3 D. & C.

Commonwealth v. Gartman.

What was said in Com. v. George, 42 Pa. C. C. Reps. 643, where the defendant alleged that the Commonwealth had not proved the charge laid in the indictment, but went on and supplied the missing links by his own testimony, is very pertinent here: "We know of no reason why the defendant in a criminal court, who is not content to leave the Commonwealth's case where he finds it, should escape a just conviction simply because he has, unfortunately for himself, completed the proof of his guilt."

The defendant's testimony shows that the contract between him and Moore was to conduct an illegal business and circumvent the law, and, therefore, there was no partnership, such as is contemplated by the Act of 1885, and the defendant was guilty of the offence defined by the Act of May 18, 1917. Under the Act of 1917, it was sufficient to show that he had received the money for the purpose of procuring certificates for whiskey, and that he fraudulently withheld and applied the same to and for his own use and benefit: Com. v. MacDonald, 74 Pa. Superior Ct. 357, 360.

Our attention has been directed to the case of Com. v. Bixler [79 Pa. Superior Ct. 295], in which Judge Trexler, of the Superior Court, filed an opinion setting forth what is necessary for a conviction under the Act of 1917. In that case it will be observed that the $500 which the prosecutor gave to the defendant was a loan to him, and that the defendant "did not receive any money or goods which belonged to any person other than himself." Here we have a different situation. Moore gave the money to Gartman to buy certificates for a certain purpose. He had no right to keep Moore's money if he could not secure the certificates. The contention is that, instead of using the money for which Moore gave it to the defendant, he appropriated it to his own use.

The remaining reasons allege error in certain remarks of the district attorney in his closing address to the jury, in the charge of the court, and the insufficiency of the evidence to support a conviction. The remarks alleged to have been made by the district attorney were: "If the defendant had certificates of whiskey, why did he not produce them?" It is argued that the statement was unfair to the defendant and that it was prejudicial to his cause. We have no recollection what counsel said to the jury, nor do we remember that objection was raised in any form at the trial. We were not asked to instruct the jury or correct any mistaken impression which might have been created by the statement. There was no request for instructions by the court on any matters alleged as error. The question of partnership was not raised at the trial. We stated the contentions of both sides as to the facts established by the testimony and its effect, and left the questions to the jury: Com. v. Winkelman, 12 Pa. Superior Ct. 497; Com. v. Scott, 38 Pa. Superior Ct. 303. The fact that there is no objection on the record to this statement shows that no importance was attached to it at the time of the trial. We do not see how this reference to the possession of the whiskey certificates was harmful to the defendant. The case was conducted with care and impartiality on both sides, and we do not feel that anything that was said or done by counsel was prejudicial to the rights of the defendant.

In our charge we referred to the defendant's absence from the city and the purchase of diamond rings, and said: "Clearly shows that he had used this money and did not use it for the purpose for which it was given to him." It is claimed that this was error because it was the expression of an opinion which was harmful to the defendant. A reading of the charge will show that was not an expression of opinion or comment on the evidence by us, but merely a statement of the Commonwealth's contention. "It (the Common-

wealth) has offered testimony to show, . . . and that the defendant, by his absence from the city and his admissions, . . . clearly showed that he personally had used the money," etc. We merely presented the theories as advanced by both sides, and adverted to the evidence relied upon to support them. We think the charge was adequate and fair, and that the rights of the defendant were carefully guarded and sufficiently stressed.

We have carefully gone over the testimony and given due consideration to the arguments advanced in support of this rule, but see no sufficient reason for disturbing this verdict. The question whether the defendant absconded and appropriated to his own use the money given to him by Moore was resolved against the defendant on evidence which warranted this finding. Unless the verdict is contrary to justice or against reason or not supported by proper evidence, some harmful or prejudicial error ought to appear before a new trial is granted.

We are not convinced that such error appears in this record, and, therefore, the rule for a new trial is discharged.

From Wellington M. Bertolet, Reading, Pa.