The Pittsburgh, Fort Wayne and Chicago Railway Company

*v.*

Sarah A. Reno *et al.*

*Filed at Ottawa November 11, 1887.*

1. REVERSAL *on the appeal of one of several defendants—whether a reversal as to all.* Where a decree is jointly binding on several defendants, so that each is liable for the whole, a reversal on the appeal of one defendant vacates the same as to all the defendants; but when the decree, in form, is joint, but is several in its effect, it may be reversed as to a part of the defendants.

2. So where a decree for the specific performance of a contract finds that the defendants are all bound by the contract, and requires one of the defendants to specifically perform the contract, and the other two defendants to permit its execution, and it appears that it is impossible for any one of the defendants alone to execute the contract without the co-operation of the others, a reversal of the decree on the appeal of any one of the defendants will operate as a reversal as to all, and such reversal can not be invoked as a defence to an action at law by the complainants against one of the defendants not joining in the appeal.

3. CONTRACT—*as to continuing switch connections with certain premises by a railway company—contract construed.* The owners of real estate sold a part thereof to a railway company, in consideration of a sum of money to be paid, and of the covenants in the contract expressed, that the purchaser should restore the switch connections then existing between the parties, and continue the same to the vendors the same as theretofore. At the date of the contract the railway company had switch connections with its road in a street and coal yards of the vendors, over which freights were carried free of charge by the purchasing company and other roads using its tracks and switches. In an action for a breach of the contract in refusing to continue such connections, it was claimed, that as the connections before were a mere matter of favor, depending on the will of the defendant company, they might, under the contract, be at any time discontinued, as before, there being no agreement as to the time such free use of the switches and connections should be had: *Held,* that such construction of the covenant was not admissible, and that the agreement was to continue to the vendors the use of the switch connections, without any limit as to time. The words, "as heretofore," in the clause, "and continue to them the use of the same hereafter as heretofore," relate to the mode of the use, and have no reference to the time of the use.

18—123 ILL.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District, affirming a judgment of the Superior Court of Cook county, recovered by the appellees, against appellant, for damages for the non-performance of a certain contract in writing, dated July 28, 1880.

In 1856, Abner Reeves purchased all that part of block 63, school section addition to Chicago, bounded on the north by Forquer street, on the east by Beach street, on the south by Taylor street, and on the west by an alley, ten feet wide, running north and south through the block, and one hundred feet east of the east line of Canal street. The part thus purchased included lots numbered from 26 to 46, both inclusive, in said block. Lots 32 to 40, both inclusive, comprised the whole frontage on Beach street, and extended west one hundred feet to a second north and south alley, ten feet in width, running through said block. The whole premises, from the time of Reeve's purchase, were occupied for coal and lumber yards, or coal yards alone, until the sale of the lots from 32 to 40, fronting on Beach street, to appellant, in 1880. During most of this time, the main track or tracks of the appellant were located in Beach street, which were also used by the Chicago and Alton Railroad Company, and switches were in use leading from these tracks to said premises, at or near their south-east corner, and connecting with private tracks laid down upon the premises for the convenience of the occupants, on which switching was done, by both the appellant and the Chicago and Alton company, of the cars consigned to the occupants of said premises over their respective roads, free of charge. Prior to the year 1880, Mrs. Reno and Mrs. Little, two of the heirs of Abner Reeves, and two of the appellees, had acquired the title to the whole of these premises, and from about the year 1878 their husbands, under the firm name of Reno & Little,

had been in the occupancy of the north part of the premises as a coal yard, as tenants of their wives.

On July 28, 1880, a written agreement was entered into, and signed by both parties, whereby Mrs. Reno, Mrs. Little, and their husbands, Charles A. Reno and Jacob H. Little, agreed to sell the entire frontage of the premises upon Beach street,—viz., lots 32 to 40, inclusive, of said block 63,—to the appellant, the Pittsburgh, Fort Wayne and Chicago Railway Company. The contract "witnesseth, that the party of the first part, in consideration of the money to be paid, and the covenants as hereinafter expressed, * * * hereby agree to sell," etc. The contract contains the following: "And it is further so agreed between the parties hereto, that said second party shall, on taking possession of the premises so hereinbefore described, restore all the switch connections now existing between said second party and said first party, or any of them, and continue to them the use of the same, as heretofore." It is for the breach of this provision of the contract that this suit was brought.

A deed of the lots numbered from 32 to 40 was made by the party of the first part to the contract, on or prior to November 23, 1880, at which date the following memorandum was signed by the parties to the contract, and indorsed thereon: "It is agreed, this 23d day of November, 1880, that the parties of the first part to the above agreement have made, at the request of the party of the second part to said agreement, a deed of this date for said premises to James D. Layng," and said agreement has been performed to that extent. In the year 1881, Layng sold the west seventy feet of these lots to the Chicago, Burlington and Quincy Railroad Company, and on the 19th day of August, 1881, that company destroyed the existing switch connections between appellant's tracks and the premises of the appellees and laid down seven parallel north and south tracks on the seventy feet so conveyed to it. The Fort Wayne switch connections have never since been restored.

A bill in chancery for a specific performance of this same covenant had before been brought by these appellees against this appellant, and the Chicago and Alton and the Chicago, Burlington and Quincy Railroad Companies, and specific performance decreed by the lower court against the three companies. On appeal to this court, by the Chicago, Burlington and Quincy company, the decree was reversed, on the ground that, under the circumstances of the case, such a decree involved such disastrous consequences, both private and public, that, in the exercise of the sound discretion of the court, specific performance should not be granted, and the cause was remanded. (*Chicago, Burlington and Quincy Railroad Co.* v. *Reno et al.* 113 Ill. 39.) The lower court afterward ordered that the bill be dismissed, but without prejudice to any remedies or actions at law which the complainants might have concerning the matters mentioned in the bill.

Messrs. WILLARD & DRIGGS, for the appellant:

It is true, no plea of *res judicata* was interposed, but the absence of such a plea will not operate to deprive a party of the benefit of such defence when a former recovery is given in evidence. 1 Greenleaf on Evidence, sec. 531.

A party not joining in the appeal can not take any benefit from a reversal of the decree, but it will stand as to him. 1 Barb. Ch. Pr. 395; *Rees* v. *Chicago,* 38 Ill. 332; *Enos* v. *Capps,* 12 id. 255; *Morse* v. *Capps,* 4 Gilm. 315.

It becomes important to know how the use of the switch connection was continued to the appellees before the date of the contract. It was customary to make no switching charge for freight coming over the roads to appellees' yards. The custom was a mere matter of favor, and not one of right, founded on contract, and it could not, by mere continuance, ripen into a fixed obligation. An implication that the custom had its origin in an agreement, can not be favored. *Insurance Co.* v. *Morrison,* 62 Ill. 242.

There being no time fixed for the termination of the free use of the switch, either party might terminate it at will. *Coal Co.* v. *Liddell*, 69 Ill. 639; *Lintner* v. *Milliken*, 47 id. 178.

At the date of the contract, appellees were receiving the use of the switches free as to charges, and the time of such use was during the will and pleasure of the companies. The words, to "continue hereafter as heretofore," mean that the use shall remain free during the like will and pleasure of the companies, and not that it shall remain free forever.

Mr. John N. Jewett, and Mr. C. C. Clarke, for the appellees :

It is contended, that appellant was not bound by the covenant to restore the connections, and continue their use for any specified length of time. The words, "as heretofore," mean that the use of the connections were to be free of charge, as enjoyed before, and the word "hereafter" means in all time to come, and the word "forever" was unnecessary. The parties, by this covenant, intended to secure the free use of the connections by contract in the future. It was thereafter not dependent on the will of the company.

Counsel claim that the decree in the chancery suit is still in full force and effect as to appellant, and is a bar to this suit. Where the decree is joint, against several defendants, it can only be reversed *in toto*. *Rees* v. *Chicago*, 38 Ill. 333; *Enos* v. *Capps*, 12 id. 255.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

There are only two grounds upon which the reversal of the judgment is urged in this court, viz., first, that the questions involved in this record were, so far as the appellant is concerned, *res judicata* at the time of the institution of this suit; second, that this record contains no evidence in support of the alleged non-performance by appellant of the contract in question.

The former adjudication which is insisted upon, is the decree in the chancery suit against the appellant for specific performance. As the Chicago, Burlington and Quincy company alone appealed from that decree, it is contended that the reversal of the decree obtained on that appeal did not affect this appellant, and that, notwithstanding such reversal, the decree still remains in full force against this appellant. The doctrine relied upon is, that a defendant who does not join in an appeal can not have the benefit thereof, even though the result of it may show that the decree was erroneous, as well against him as the appellant, and that an appellate court can not reverse a decree against a party who has not appealed, even though the court below had no jurisdiction to make the decree against him, as laid down in 1 Barb. Ch. Pr. 395, and recognized by this court in *Enos* v. *Capps*, 12 Ill. 255, and *Rees* v. *City of Chicago*, 38 id. 322. But the rule was further declared, in the two latter cases, that a decree jointly binding on several defendants, so that each is liable for the whole, if reversed at all, must be reversed as to all; but where a decree in form is joint, but is several in its effect, it may be reversed as to a part of the defendants.

In the decree for specific performance, the court found that the defendants, the Chicago, Burlington and Quincy Railroad Company and the Chicago and Alton Railroad Company, were and are, in equity, bound together with said Pittsburgh, Fort Wayne and Chicago Railway Company, by said clause of said agreement providing for said switch connections and their use, as aforesaid. "And the court further finds that the defendants failed and refused to restore said switch connections. * * * And the court therefore finds that the complainants are entitled to a specific performance, by the defendants, of the aforesaid clause or provision of said agreement in reference to said switch connections and their said use." And it was thereupon decreed that the Fort Wayne company make a switch connection between its tracks and the premises of the

complainants, and that the other defendants suffer and permit said connection to be made, and that the defendants shall allow, when so made, the use of said switch connection to the complainants, etc. It would be impossible for either of the companies, of itself, to restore the switch connection as it was at the time of the contract, as it would necessarily have to cross the tracks of all the companies. We think the decree was of such a joint character as to bring it within that class of joint decrees where a reversal, if any, should be as to all the defendants. It was the entire decree which was reversed by this court, and not merely the decree against the Burlington company. We are of opinion that the chancery suit, and the decree for specific performance entered therein, do not offer any impediment to the maintenance of this suit.

The second point, that the record contains no evidence in support of the alleged non-performance of the contract, is based upon the construction which appellant's counsel would place upon the contract, which is, that the continuance of the switch connection was to be only at the will of appellant.

The evidence shows that the appellant, after taking possession of the premises and putting in its two additional tracks, did restore the switch connections, and continue to the appellees the use thereof until the Burlington company took theirs up, in 1881, since when such use has not been continued, and, as appellant contends, it was not required to be, by the terms of the agreement. Such reading of the contract is attained in this way: As to the use of the switch before the date of the contract, it is said the evidence shows no more than that it was the custom of the Fort Wayne and Alton companies to make no switching charge for freight coming over either of their roads, consigned to appellees' coal yard; that there being thus no agreement upon the subject, and therefore no time fixed for the termination of the free use of the switch, either party might terminate it at will. And the language of the contract being, that the use of the switch shall *continue hereafter as*

*heretofore,*—as the free use of the switch might have been rightfully discontinued at any time before the contract,—a continuance of the free use of the switch afterwards was subject to the same right of discontinuance. This we regard as a strained, and not the natural, construction. The switching privilege was a valuable one, and formed, no doubt, an important part of the consideration for the sale of the land. The agreement for the sale, in which this covenant appears, states it to be "in consideration of the money to be paid and the covenants as hereinafter expressed." Of very little worth would have been the covenant for the continuance of the free use of the switch if appellant might, at any time, discontinue the use. Evidently, such was not the understanding of the parties. The agreement was to continue to appellees the use of the switch connections, without any limit as to time. The words, "as heretofore," in the clause, "and continue to them the use of the same hereafter as heretofore," as we read them, relate to the mode of the use of the switch connections, and have no reference to the time of the use.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*