CHATTANOOGA, R. & C. R. Co. *v.* CINCINNATI, N. O. & T. P. RY. Co. *et al.*

*(Circuit Court, E. D. Tennessee, S. D.* December 26, 1890.)

1. REMOVAL OF CAUSES—MOTION TO REMAND—PRESUMPTION.
    Under Act Cong. Aug. 13, 1888, c. 866, § 3, which provides that, when a proper bond and petition for removal are filed, "it shall be the duty of the state court to accept said petition and bond, and proceed no further in the case," where the record as certified shows that such bond and petition were filed, it will be presumed, on motion to remand, that they were duly accepted by the state court, though no order of removal was entered.

2. SAME—SEPARABLE CONTROVERSY.
    Under section 2, Id., which provides that where there is in any removable suit a controversy wholly between citizens of different states, and which can be determined as between them, either one or more of the defendants actually interested therein may remove the suit, a suit in which the only controversy is between the complainant and one of the defendants may be removed by such defendant, though other persons, who have no interest in the suit, have been improperly joined as parties defendant.

3. CARRIERS—TRAFFIC CONTRACT—RESCISSION.
    A contract between railroad companies by which one company allows the other to use its freight depot and tracks in consideration of rent at a fixed rate per ton and per car, without any provision as to the length of time the contract is to remain in force, may be rescinded by either party at any time, on reasonable notice.

In Equity. On motion to remand and on motion to dissolve injunction.

*McAdoo & Barr* and *Clark & Brown,* for complainant.

*Lewis Shepherd,* for defendants.

KEY, J. This suit was commenced in the chancery court of the state, and arises from a contract made by complainant and defendant Cincinnati, New Orleans & Texas Pacific Railway Company, June 28, 1888. The second paragraph of said contract says:

"For the use of the freight depot of the Cincinnati, New Orleans & Texas Pacific Company, the Chattanooga, Rome & Columbus Company will pay at the rate of 25 cents per ton for all freight received and delivered at the depot; this payment to include all services for unloading, delivering, and way-billing, and collecting the freight charges on merchandise of the Chattanooga, Rome & Columbus Company passing through the freight-house of the Cincinnati, New Orleans & Texas Pacific Company. For the use of the Cincinnati, New Orleans & Texas Pacific tracks for bulk freight, the Chattanooga, Rome & Columbus Company will pay the sum of 75 cents per car on all freights delivered on the bulk tracks of the Cincinnati, New Orleans & Texas Pacific Company."

On the 10th of September, 1890, the Cincinnati, New Orleans & Texas Pacific Railway Company gave a written notice to complainant that, "commencing Monday, October 13, 1890, the foregoing contract should cease and determine." On the last-mentioned day a bill was filed, asking to enjoin the said defendant from terminating this contract by refusing to comply with its terms, for the reason, as is alleged, that the contract is a permanent one and can only be dissolved or ended by mutual consent of the parties thereto. A temporary injunction was granted, and the Cincinnati, New Orleans & Texas Pacific Railway Company filed its petition, affidavit, and bond in the state court for removal into this court, and the cause is before us upon a motion to remand upon the part of complainant's solicitors, and the motion to dissolve the injunction on behalf of defendants.

The motion to remand is predicated upon two grounds: *First*, because the bond and petition filed for removing the cause were not accepted, and no order for transferring the cause to this court was made by the state court; *second*, because the cause is not removable, and this court has no jurisdiction because it is not a separable controversy. There appears in the record of the case filed here no order of the state court in respect to the removal of the cause. Section 3, c. 866, Act Aug. 13, 1888, (St. at Large, 1888–89, p. 435,) provides that, whenever any party entitled to remove a suit, except in certain cases, of which this suit is not one, may desire to remove such suit from a state court to the circuit court of the United States, he may make and file a petition in such suit in such state court, for the removal of such suit into the circuit court, and shall make and file therewith the bond required. "It shall then be the duty of the state court to accept said petition and bond, and proceed no further in the case." The state court has but two things to do. Those are to accept the bond and petition, and to take no further step in the case. There is nothing in the law requiring the state court to make an order of removal. Its only affirmative act is to accept the petition and bond. We find in this record, as certified from the state court, a copy of the petition and bond for the removal of the cause, and that they were filed in said court October 22, 1890. The presumption of law is, under this state of the record, that the state court did its duty, and accepted the petition and bond. An order of the state court would not remove the cause if it be not removable, nor would it prevent its removal if the petition shows it to be removable.

The other question upon this branch of the controversy is whether this is a case that can be removed. The complainant is a corporation created and existing by authority of the state of Georgia. The defendants are the Cincinnati, New Orleans & Texas Pacific Railway Company, a corporation of the state of Ohio; the Alabama Great Southern Railroad Company, a corporation of the state of Alabama; the Cincinnati Southern Railway, an alleged corporation of Ohio; and the East Tennessee, Virginia & Georgia Railway Company, a corporation of Tennessee. There are no parties to this contract in controversy but complainant and the Cincinnati, New Orleans & Texas Pacific Railway Company.

The Cincinnati Southern, as the bill shows, has not the slightest interest in it or control over it. It is not a proper party to the suit, and there can appear no reason for making it a party, unless the purpose was to prevent the jurisdiction of the court. So far as the other parties to the suit are concerned, they are all corporations of different states, and of states different from the Cincinnati, New Orleans & Texas Pacific Railway Company. The second section of the act of August 13, 1888, already referred to, says:

"And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district."

The real and only controversy here is between the complainant and the Cincinnati, New Orleans & Texas Pacific Railway Company. None of the other defendants have any interest in the litigation. They are not proper parties, and are improperly joined as such.

The question as to whether there be a separable controversy does not arise, and cannot arise, because the controversy is between but two parties. The motion to remand is overruled.

This brings us to the motion of the defendant Cincinnati, New Orleans & Texas Pacific Railway Company to dissolve the injunction. This depends upon the construction to be given the contract. Complainant insists that the contract is permanent and perpetual, and can only be terminated by the mutual consent of the parties; or, if it be not such a contract, it is one running from year to year. The question has recently been settled by Judge JACKSON of this circuit, in the case of *Baltimore & Ohio R. Co.* v. *Ohio & M. R. Co.*, in the southern district of Ohio, (no opinion filed.) The Baltimore & Ohio Company did an express business. On the 29th day of September, 1884, it made an agreement with the Ohio & Mississippi Company that the last-named company should furnish to the other company cars and other facilities for the conducting and carrying on the express business on the lines of the Ohio & Mississippi Company. The contract made no provision as to how long it should continue, or how it should be terminated. In this respect it was like the one in controversy here. There was the following marked difference, however: The tenth paragraph of the contract between the parties in the Ohio suit stipulated that—

"The said Ohio & Mississippi Railway Company, in consideration of the covenants and conditions herein contained, doth further agree with the said Baltimore & Ohio Railroad Company, so far as it lawfully may, that it will not make any contract relative to the forwarding of express matter over its said road with any other railroad or express company, but that the said Baltimore & Ohio Railroad Company shall have the exclusive right to forward express matter over the said railroad of the party of the second part."

After the foregoing contract had been in operation some years, and the express company of the Baltimore & Ohio Railroad Company had established and opened offices all along the lines of the Ohio & Missis-

sippi Company, the latter company threatened to terminate the contract, and took action to that end.    The Baltimore & Ohio Company filed a bill to enjoin the other company from disregarding and terminating its said contract by withdrawing its cars and other facilities from the complainant in that bill, and giving the express matter to some other company.    There is no clause in the contract under our consideration similar or equivalent to the paragraph quoted from the Ohio case, and yet that bill, presenting a stronger case than the one here, was dismissed upon demurrer after able and elaborate argument.    If that bill could not be sustained, certainly this cannot be, unless it be, as maintained on complainant's behalf, that this contract gives an interest in realty by allowing the use of the depot and tracks.    It is clear that the contract gives no such interest.    Complainant under it has no possession of the depot or control of the tracks.

I conclude, therefore, that the injunction should be dissolved; but, in order that complainant may have opportunity to meet the exigencies of its situation, this dissolution will not go into effect until the 1st day of March next, at which date the dissolution will become absolute.