# Rosenblatt, Appellant, *v.* Weinman.

*Partnership—Profits—Losses—Contract of indemnity.*

Where two persons enter into a contract under which one advances money which the other is to use in purchasing stock of a corporation, and it is agreed that the two shall divide the profits, but that the purchaser shall bear any loss that may result, the contract is not one of partnership as between the parties, but is a contract of indemnity under which the purchaser indemnifies the other party against loss in consideration of the privilege of sharing the profits. If no time is specified for the termination of such a contract, either party may terminate it upon notice to the other, but such notice must be explicit and unequivocal, and of such a character as to leave the party notified no excuse for misinterpreting or misunderstanding it.

Argued March 29, 1909. Appeal, No. 60, Jan. T., 1909, by plaintiff, from order of C. P. No. 5, Phila. Co., Dec. T., 1906, No. 1,094, refusing to take off nonsuit in case of Lizzie Rosenblatt to use of Benjamin Rosenblatt v. Harry Weinman. Before MITCHELL, C. J., FELL, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for money had and received. Before RALSTON, J. The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Emanuel Furth*, with him *David Bortin* and *Jacob Singer*, for appellant.—A partnership without limitation as to time is construed as one at will and may be dissolved at any time by either partner giving notice to his copartner of his intention so to do: Marston v. Gould, 69 N. Y. 220.

The nearest case on the subject in our state is: Plumly v. Plumly, 6 Pa. C. C. Rep. 72.

*Julius C. Levi*, for appellee, cited: Fry v. Potter, 12 R. I. 542; Hourquebie v. Girard, 12 Fed. Cas. 6,732; Williams v. Henshaw, 28 Mass. 79; Hubbell v. Buhler, 43 Hun (N. Y.), 82; Marston v. Gould, 69 N. Y. 220.

OPINION BY MR. JUSTICE STEWART, June 22, 1909:

A nonsuit was directed in this case in the court below, and the appeal is from the refusal of the court to take it off. The facts briefly are these. In the latter part of 1899 the plaintiff advanced to the defendant $6,265 to be employed by the latter in the purchase of stock in the National Electric Company. The stock was purchased accordingly in defendant's name. Later on plaintiff received from defendant this acknowledgment in writing signed by the defendant: "Philadelphia, Sept., 14, 1899. Due to Lizzie Rosenblatt Sixty two hundred and sixty-five dollars, which was to be used to purchase 400 shares of National Electric Company stock and pay assessments on same. I agree to divide profits, if any, on same, and in case of any loss, I will assume all myself." Shortly thereafter, with the consent of both parties, the stock so transferred was exchanged for its equivalent in the stock and bonds of another company into which the National Electric Company had been merged. On December 19, following, the defendant, at the request of the plaintiff, transferred the substituted stock and bonds to the latter's husband, here the use plaintiff. The second day following the transfer plaintiff said to defendant that he "wanted the partnership dissolved or ended." Suit was brought December 10, 1906, to charge defendant with the difference between the original investment and the market value of the stock and bonds on the day when the use plaintiff expressed his desire to end the partnership, this difference as shown by the stock exchange quotations being $2,359. The plaintiff did not sell the stock and bonds, but, so far as appears, still held them at the time of bringing the action. Their present value does not appear. Plaintiff's contention is that the contract was one of partnership; that the term of continuance being undefined, it was determinable at the pleasure of either party; that it being for a single transaction, and the amount due the withdrawing party being definitely ascertained, no accounting was required, and that therefore a right of action accrued immediately upon dissolution to the one withdrawing. That all this would follow were the contract one of partnership pure and simple may be conceded. In

Galbreath v. Moore, 2 Watts, 86, it was held that an agreement between two individuals to enter into a single transaction of purchase for the purpose of profit, does not create a partnership such as will confine the remedy of either to obtain the fruits of their purchase to an action of account render, and that an action of assumpsit can be maintained in such case. The relation of partnership does not necessarily here arise. There was in this case no community except as to profits. That this is an essential element in partnership is universally recognized, but the authorities agree that it does not create a partnership. As was said in Walker v. Tupper, 152 Pa. 1, its absence may be regarded as conclusive against the partnership, but its presence is not conclusive in favor. The rights of third parties are not here involved, and it is purely a relation between parties to the contract as affecting themselves that is to be considered. The defendant had no property in the stock; he was to contribute nothing whatever either in money, skill or service to the undertaking; he was to share equally in the profits, if any, and to bear all loss. It is true that sharing in the profits ordinarily gives rise to a strong presumption of partnership where the rights of third parties are involved; but where the controversy concerns none but the parties to the contract, and can be settled by an action of assumpsit by one against the other, there would seem to be no reason to resort to the rules of partnership to determine their respective rights. As we view this contract it contemplated no partnership, as that term is ordinarily understood, but was simply a contract of indemnity against loss, the consideration moving to the indemnitor being the privilege of sharing in expected profits. But whether a partnership, or what has latterly become distinguishable therefrom as a joint adventure, or a contract of indemnity, this much is clearly deducible from the contract itself—no date being fixed for the determination of the contract, whatever it was, it rested with either party to end it at his pleasure; and when ended the rights of the parties became fixed. No more was it in plaintiff's power to continue defendant's obligation to indemnify beyond such time as he chose to call for a settlement, than it was in the defendant's

power to require the plaintiff to hold the stock for a longer period than the latter desired. The contract relation was to end some time, and, in the absence of any provision fixing the date, the law will imply that it was determinable at the pleasure of either, providing good faith be observed. The only question in the case is, did the plaintiff by any certain, positive declaration or act terminate the contract on December 20, 1900? He admitted that he did not sell either stock or bonds, though both were in his name and subject to his disposition. So far as appears he is retaining them to the present time, with what result as to profit or loss of course we do not know, nor does it concern us. Whether his action could be maintained depended on what transpired on December 20, 1900, and for this we have the testimony of the plaintiff himself. It will not lengthen this opinion unduly to give his testimony in full. "Right after they (stock and bonds) were transferred and I had them in my name I told them (defendant) I wanted that partnership dissolved or ended. I wanted to make good, I wanted my money instead of the stock. He (defendant) said it was not convenient, you hold them, you will never lose anything, you have that agreement and they will be all right, I will never let you lose anything, or words to that effect, and we were friends until 1905." It is impossible to gather from this an explicit and unequivocal demand for an immediate termination of the relation subsisting. At most it was but an expression of the desire on the part of plaintiff to close out the transaction, and this was followed by an equally positive expression of unwillingness on the part of the defendant, on the ground of inconvenience at that particular time, and a request that plaintiff should continue to hold the stock on the assurance that defendant would not allow him to lose anything. No final conclusion was reached. The plaintiff made no reply indicating a rejection or refusal of defendant's demand, or determination to hold him for the loss as measured by the current quotations on the stock exchange that day. On the contrary, he says that thereafter he and defendant continued to be friends for five years, during which time he asked the defendant several times for a settlement, but in no place does he say

that he made any demand for settlement as of December 20, 1900, or that the value of the stock on that day was ever spoken of by either. It was only after a controversy arose between them as to other matters, and after an interval of five years from the transaction, that plaintiff brought suit. A notice of a determination to end such a relation as existed here ought to be so explicit as to leave the party notified no excuse for misinterpreting or misunderstanding it. Such was not the case here. On the contrary, it was plainly tentative, and the only understanding to be derived from what occurred is that the conclusion reached was acquiescence in the continuance of the relation, especially in view of the fact that plaintiff continued to retain both stock and bonds. The sufficiency of the notice, the facts in regard to it being ascertained, was for the court, and we quite agree that in this case the notice was wholly inadequate to charge defendant with liability as of the date when the notice was given.

Judgment affirmed.