[No. 24548. Department Two. September 27, 1933.]

FISH CLEARING HOUSE, INC., *Respondent,* v. MELCHOR, ARMSTRONG, DESSAU COMPANY, *Appellant.*[1]

*Christopher Jacobsen* and *McMicken, Ramsey, Rupp & Schweppe,* for appellant.

*Wettrick, Wettrick & Flood,* for respondent.

BLAKE, J.—The plaintiff brought this action to recover commissions as a fish broker on account of packs of mild-cured salmon purchased by defendant in the seasons of 1930 and 1931 from Nichiro Gyogyo Kaisha, Ltd. The plaintiff's cause of action rests on an oral contract entered into about June 1, 1928, by which, it is alleged, defendant agreed to pay plaintiff a commission of one cent a pound on all mild-cured salmon which defendant might thereafter purchase from the Nichiro company. From a judgment entered on findings favorable to plaintiff, defendant appeals.

For many years, respondent has been engaged in

[1]Reported in 25 P. (2d) 381.

business as a fish broker in Seattle. T. F. Eggers was its president, and H. S. Finch its secretary. Appellant has long been a buyer and distributor of fish in the world markets. Its principal offices have been in New York, but it has for many years maintained an office in Seattle in charge of one Arnold Dessau. Over a period of several years prior to 1928, appellant had purchased, through respondent, large quantities of mild-cured salmon.

In the spring of 1928, Eggers and Finch learned that the Nichiro company contemplated offering on the Seattle market its entire pack of mild-cured salmon. The Japanese company had never before offered such a pack on the Seattle market. The company was represented in Seattle by one George Nishimura, whom Eggers and Finch knew quite well. Eggers and Finch told Dessau of the contemplated offer of the Japanese company. The latter expressed a desire to obtain the entire pack. The result was that Eggers and Finch introduced Dessau to Nishimura. Negotiations were had between Dessau, Nishimura and Eggers and Finch, which, as respondent asserts in its brief, resulted in an oral contract as follows:

"At this juncture, the parties came to an agreement with respect to this business, by the terms of which the appellant undertook and promised that if respondent enabled him to purchase this pack, the appellant would pay respondent one cent a pound brokerage or commission, so long as appellant purchased the Nichiro output. This agreement was acted upon and pursued during the course of 1928 and 1929, but appellant company has failed to comply with the terms thereof since 1930, although it has continued to purchase the Nichiro pack regularly since that date. . . .

"What respondent undertook to do was to bring the parties together and to assist in the purchase of the pack of mild-cured salmon, in consideration of which appellant promised and agreed to pay a commission

so long as it purchased the fish from the Nichiro company. . . .

"There was no continuing contract between the Nichiro Company and appellant for the purchase of the fish, and respondent did not undertake to bring about such an arrangement. There was, however, a contract between the parties hereto regarding the services of respondent and the payment of the commission which became operative whenever and as long as appellant bought the fish from the Nichiro company."

On August 27, 1928, appellant, respondent and Nishimura entered into a written contract, whereby respondent agreed to buy two hundred tierces of the Nichiro pack at prices ranging from nineteen to twenty-eight cents a pound. It is agreed that these prices included a commission to respondent and Nishimura of one cent a pound. At the time the contract was entered into, it was supposed that two hundred tierces comprised the entire Nichiro pack of 1928. Later, it was learned the pack was larger, and on September 13th a tri-party written agreement, similar to that of August 27th, was entered into covering eighty tierces. Still later, it was learned that the pack contained an additional twenty-six tierces. These, appellant took on the same basis as the two hundred eighty covered by the written contracts. Appellant not only paid the one cent a pound commission on the entire pack, but gave respondent a bonus of $1,700. In its letter remitting the bonus check, appellant said:

"Trusting that this matter has been handled to your full satisfaction and that we may have the pleasure of making similar arrangements another season, we remain," etc.

to which respondent replied:

"We sincerely trust that we may have the pleasure of again entering into another deal with you on this pack for 1929, and we believe this will materialize."

The deal in 1929 did materialize, and appellant took the Nichiro pack, consisting of seven hundred fifty tierces. On September 21, 1929, appellant wrote respondent as follows:

"In reference to our purchase of about 750 tierces Kamchatkas from Nichiro Fisheries Co., Ltd., we hereby confirm the verbal arrangement made; namely, that as soon as we shall have inspected and accepted the quality of each shipment, we shall pay to you a brokerage of 1 cent net per lb. on every tierce accepted."

The appellant accordingly paid the commission on the pack of 1929.

It seems to us the foregoing narrative of facts gives substantial warrant for appellant's contention that no such oral contract as claimed by respondent was, in fact, entered into in 1928. But from Dessau's testimony, the trial court was warranted in finding that there was some sort of an understanding between him and Finch and Eggers that, as long as appellant purchased the Nichiro pack, respondent should receive something by way of commission. So we shall accept the finding of the trial court that the oral contract was entered into as claimed by respondent.

But it does not follow that respondent is entitled to recover a commission on the 1930 and 1931 packs. Appellant interposed the defense that the contract sued on was void under the statute of frauds. The pertinent portion of the statute (Rem. Rev. Stat., § 5825) reads as follows:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) every agreement that by its terms is not to be

performed in one year from the making thereof . . . ''

The respondent contends, and the trial court concluded, that the contract under consideration here was not within the statute, because it was possible that the contract could be performed within a year from the time it was entered into. That is, the right of respondent to recover the commissions was contingent upon appellant's purchase of the Nichiro pack in subsequent years. The argument is that, it being possible that the contingency might arise only by the purchase of the 1928 pack, the contract might therefore be concluded within a year. In other words, the appellant could in any year relieve itself from the obligation to pay a commission by refraining from purchasing the Nichiro pack.

Abundant authority may be found to the effect that, if through any contingency a contract may be performed within a year, it does not contravene the statute. *In re Field's Estate,* 33 Wash. 63, 73 Pac. 768; *Dent Lumber & Shingle Co. v. Cedarhome Lumber Co.,* 141 Wash. 593, 252 Pac. 141. In the former case, the rule was stated in the following language:

''It has been well established by authority that the test is not what the parties expected the duration of the contract would be, but whether of necessity it must be of such duration.''

It does not follow, however, that every oral contract which under some possible contingency may be performed within a year, escapes the inhibition of the statute. In Browne on the Statute of Frauds, §§ 282 and 285, it is said:

''We now come to the cases of agreements which are in terms to do a thing during or after a definite period of time, more than one year from the making of the agreement. To such cases the statute generally

applies; and this may be so, notwithstanding that the agreement may consistently with its terms cease to be operative in one year or less. Thus, a contract of hiring for more than a year is within the statute, although it be stipulated that either party may withdraw from the contract before the expiration of a year. And a contract for the use of a patented cut-off on a certain steamboat for a definite number of years is within the statute, although the parties may recognize the possibility of the destruction of the vessel during that time. In such cases as those just cited, it cannot be said that the agreement would be fully performed when one party withdrew from the contract of hiring, or when the vessel was lost or destroyed; we should rather say, that in such event, the performance of the agreement according to its terms would be frustrated or become impossible.''

''The next question is, What is that *performance* within the space of a year from the making, the possibility of which removes a contract from the reach of this provision of the statute. One thing is well settled and admitted in all cases; that the contract must be capable of entire and complete execution within the year. It is not enough that it may be commenced, or ever so *nearly* completed in that space of time. In certain kinds of contracts, however, as where a series of things is to be done, occupying in the whole more than a year, but each item, as it is performed, drawing with it a separate liability therefor, the statute does not prevent an action upon such items as are performed within the year, to recover the stipulated *pro rata* compensation.''

Our own decisions conform to this statement of the law. *Johnson v. Upper,* 38 Wash. 693, 80 Pac. 801; *Union Savings & Trust Co. v. Krumm,* 88 Wash. 20, 152 Pac. 681; *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240 Pac. 565; *Tonkoff v. Roche Fruit & Produce Co.,* 137 Wash. 148, 242 Pac. 3; *Seeley v. Morris,* 137 Wash. 274, 242 Pac. 359; *Barash v. Robinson,* 142 Wash. 118, 252 Pac. 680; *Peabody v. Pioneer Sand &*

*Gravel Co.,* 164 Wash. 26, 2 P. (2d) 714; *Weaver v. General Metals Merger,* 167 Wash. 451, 9 P. (2d) 778.

The rule so broadly stated in the case of *In re Field's Estate, supra,* has not been strictly applied. Indeed, as pointed out in the dissenting opinion in *Hendry v. Bird, supra,* the rule there stated has been distinctly modified, if not overruled. It is hardly possible to lay down a general rule by which it may be determined that every contingency by which a contract may be terminated within a year takes it out or leaves it within the inhibition of the statute.

The modification of the rule stated in the case of *In re Field's Estate, supra,* is tersely expressed in *Tracy v. Barton,* 139 Wash. 440, 247 Pac. 734, in the following language:

"We have held that, when no time for the performance of a contract is fixed by the parties, if it nevertheless appears from the surrounding circumstances and, considering the object contemplated by the contract, that the parties intended that it should extend over a year, recovery could not be had upon it, unless in writing."

But the rule so stated does not include an important element contained in the above quoted statement of Browne, in § 285, namely, that the *performance within a year,* which will take a contract out of the inhibition of the statute, must be such as will finally terminate the obligations created by the contract. This is an important factor in the determination of the present case.

Applying this factor and the rule as stated in *Tracy v. Barton, supra,* to the contract here under consideration, we think it is apparent we have a contract that *"by its terms was not to be performed in one year from the making thereof."* From the surrounding circumstances, it seems clear to us, "considering

the object contemplated by the contract, that the parties intended that it should extend over a year." Equally clear is it that, under the contingency suggested, the contract could not be finally terminated within a year. It might be inoperative for a year, by reason of appellant's failure to buy the Nichiro pack. That, however, would not terminate it according to its terms or in the contemplation of the parties. For, after such intervening year when the pack was not purchased, the obligation to pay a commission would still exist, or revive, if the appellant purchased the pack in a subsequent year. The contract is clearly within the inhibition of the statute, and is, therefore, void.

The judgment is reversed, with directions to dismiss the action.

TOLMAN, STEINERT, and MAIN, JJ., concur.

BEALS, C. J., concurs in the result.