## GUY B. CORNWELL *v.* YANKEE METAL PRODUCTS CORPORATION

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 83069

Memorandum filed December 15, 1952.

*Louis Stein*, of Bridgeport, for the Plaintiff.

*Slavitt & Connery*, of South Norwalk, for the Defendant.

ALCORN, J. The plaintiff seeks to recover damages for the claimed breach of an oral contract for his services as sales manager of the defendant corporation. There is no issue over the facts that the contract was to terminate, unless renewed, on August 31, 1950, and that the parties severed relations in May, 1950. The issues in dispute are, first of all, the date upon which the contract was made and its terms, and, secondly, if the contract meets the requirements of the Statute of Frauds, whether the plaintiff voluntarily resigned or was discharged.

The informality of the transaction is evidently the result of the reliance which the plaintiff placed upon the good faith of the defendant's president and dominating head, developed over many years. The plaintiff had been a buyer for Sears, Roebuck Company for nearly twenty years. For many years he had known and dealt with Ben Putterman, the

defendant's president. In April, 1949, serious discussions began between them concerning the defendant employing the plaintiff as sales manager. The plaintiff at that time was earning, with bonuses, about $13,750 per year, and his position assured him certain attractive retirement benefits. The question of terms which would offer some adequate retirement benefit in a position with the defendant presented the most difficult area of agreement because the defendant objected to giving the plaintiff benefits not accorded other employees.

In May, 1949, Putterman tentatively suggested a salary of $15,000 per year, plus a graduated bonus based upon defendant's sales, plus the payment, by the defendant, of a premium amounting to $1865.80 annually upon a retirement income insurance policy on plaintiff's life.

In June, 1949, plaintiff and Putterman conferred at the office of defendant's attorney in New York. At this conference salary, bonus, insurance, and plaintiff's wish to acquire stock in the defendant corporation were discussed and at the conclusion of the meeting Putterman undertook to send plaintiff a written contract embodying an agreement supposedly reached.

Within a few days of June 28, 1949, Putterman sent a proposed contract, exhibit B, unsigned, to the plaintiff. It provided, so far as now material, that the plaintiff be employed as sales manager from September 1, 1949, to August 31, 1950, at a salary of $15,000, payable $1250 per month and, as additional compensation, $\frac{1}{4}$ of 1% of company shipments over $2,000,000 but not exceeding $2,500,000, plus 1% of such shipments over $2,500,000, but not exceeding $3,000,000, plus $1\frac{1}{2}$% of shipments over $3,000,000 but not exceeding $3,500,000, plus 2% of all shipments in excess of $3,500,000. The proposed

agreement made no provision regarding insurance, and plaintiff's wife at once notified Putterman by phone at plaintiff's request that, for this reason, exhibit B did not correctly represent their agreement. The proposed agreement was never signed by either party.

Following receipt of exhibit B, but before July 12, 1949, the plaintiff and his wife visited at the Putterman home and there again discussed the terms of plaintiff's employment, particularly the item of insurance and the purchase of stock in the defendant corporation. Putterman told him he could not allow these items and that if the plaintiff insisted upon them he should not resign his present position. The plaintiff yielded to this requirement, he and Putterman shook hands, and plaintiff and his wife returned to their home in Chicago.

On July 12, 1949, the plaintiff sent his written resignation to Sears, Roebuck Company, effective August 1, 1949. The defendant put him on its payroll beginning August 1, 1949, and on August 31, 1949, he received a salary check for the month of August at the rate of $1250. He continued to be employed at the same monthly salary thereafter until the employment terminated on May 6, 1950, although he received full salary for the month of May on May 31, 1950.

It is concluded that the parties entered into an oral contract for the plaintiff's services as sales manager in July, 1949, and prior to the twelfth day of that month. It is concluded further that the contract called for the plaintiff to serve as sales manager for the defendant for the period from August 1, 1949, to August 31, 1950. It is concluded further that, except as to the period of performance of the contract, which was as herein stated, other terms were set forth in the proposal exhibit B.

The agreement thus made could not, by its terms, be performed within one year from its making and neither it, nor any memorandum of it, is in writing and signed by the party to be charged. The agreement is, therefore, unenforceable under the Statute of Frauds. General Statutes § 8293; *Burkle* v. *Superflow Mfg. Co.,* 137 Conn. 488, 492; *Grant* v. *New Departure Mfg. Co.,* 85 Conn. 421, 424; *Comes* v. *Lamson,* 16 Conn. 246, 250.

It is not established that the defendant is indebted to the plaintiff for moneys disbursed by the latter on the former's behalf as alleged in the fourth count. Nor is there evidence from which the court can, or is asked to, determine the reasonable value of plaintiff's services for the work performed for the defendant. *Burkle* v. *Superflow Mfg. Co.,* supra, 498. The only damages sought were salary at $1250 per month for the months of June, July and August, 1950, commissions on sales at the contract rate, the claimed insurance premium, and disbursements of $196 claimed under the fourth count.

In view of the foregoing it is unnecessary to discuss the issues raised as to the circumstances surrounding the termination of plaintiff's employment.

Enter judgment for the defendant.